### In re LITTMANN

(Surrogate's Court, New York County.   December 12, 1914.)

1. CONSTITUTIONAL LAW (§ 56*)—COURTS (§ 52*)—DISTRIBUTION OF POWERS—POWER OF LEGISLATURE—TRANSFER OF JURISDICTION.

As the Legislature cannot deprive the Supreme Court of jurisdiction conferred upon it by the Constitution, Code Civ. Proc. § 2653, requiring records of appointments of general guardians of infants made by the Supreme Court to be filed in the Surrogate's Court, and making such guardians subject to all the duties and liabilities of guardians appointed by the surrogate, is unconstitutional, in so far as it attempts to deprive the Supreme Court of its general equitable jurisdiction over guardians.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 62–65; Dec. Dig. § 56;* Courts, Cent. Dig. §§ 184–192; Dec. Dig. § 52.*]

2. GUARDIAN AND WARD (§ 13*)—APPOINTMENT—FILING OF SUPREME COURT RECORD WITH SURROGATE.

Code Civ. Proc. § 2653, providing that, where the Supreme Court appoints a general guardian of an infant's person or property, the record of appointment shall be filed in the Surrogate's Court, does not apply to appointments and orders made before the enactment of the statute.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 13–20; Dec. Dig. § 13.*]

In the matter of Johanna Littmann's application to file a Supreme Court record with the surrogate.   Application denied.

Nathan Ottinger, of New York City, for petitioner.

FOWLER, S.   This application to file in the Surrogate's Court a certified copy of the guardian's bond and the order or decree of Mr. Justice Philbin, of the Supreme Court of the state of New York, made in June last past, appointing a guardian for one Johanna Littmann,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

is taken pursuant to section 2653 of the new Surrogates' Law of 1914, which went into effect on September 1, 1914. This type of legislation is revolutionary in this state, in so far as it purports to invest this court with a superintending jurisdiction over the Supreme Court of the state. I do not comprehend it. The Supreme Court is a constitutional court, possessed since 1846 of the general jurisdiction in equity exercised by the Court of Chancery of New York for 150 years. One branch of this jurisdiction extends to the custody and care of infants and their property and estates. Such jurisdiction is ancient, well established, and perfectly protected by the Constitution of the state. Wilcox v. Wilcox, 14 N. Y. 575, 578; Matter of Hubbard, 82 N. Y. 90, 92.

[1] The Legislature has no power to deprive the Supreme Court of such jurisdiction or to impede or impair it in any way. Alexander v. Bennett, 60 N. Y. 204. Besides this, the Surrogate's Court has no adequate authority or power to call a guardian appointed by the Supreme Court to account, or to discipline such guardian in any way obnoxious to the Supreme Court. If I were a judge of the Supreme Court, I should not hesitate to issue an inhibition to any surrogate who interfered with a chancery guardian appointed by me pursuant to my constitutional jurisdiction. The new section (2653, C. C. P.) in question attempts also to subject the guardians appointed by the Supreme Court to all the duties and liabilities of guardians appointed in the Surrogate's Court. This is evidently done for the purpose of compelling them to account to this court. About the validity of this provision I say nothing.

But let us suppose for a moment that as surrogate I should appoint a special guardian in this court to call to account a guardian appointed by the Supreme Court, and thereafter I should give directions in such a proceeding in respect of funds in the hands of the Supreme Court guardian and subject to the control and order of that court only. As surrogate I would have no authority to enforce such orders. I am not likely to lessen the dignity of this court by making any such futile orders or decrees. I shall not attempt to control the Supreme Court while in this court. I make the above hypothesis simply by way of argument and illustration. It is only necessary to refer at this time to the opinions of the Court of Appeals in Wilcox v. Wilcox, 14 N. Y. 575, 578, and Matter of Hawley, 104 N. Y. 250, 10 N. E. 352, as they and cognate decisions lead me inevitably to the principles and the conclusions I have enunciated.

[2] Concerning the power of the Legislature to direct the mere filing of Supreme Court proceedings in this court I will say nothing at present. It might direct them to be filed in a church vestry. Such filing in this court would be abortive, as I have already shown. The act prescribes no penalty for not filing same, and the legislative mandate probably would not be enforced by the courts, as the law never compels vain or useless things. "Lex neminem cogit ad vana seu inutilia peragenda." But it is perhaps unnecessary at this time to hold further in this proceeding than that section 2653, C. C. P., has no application to bonds, decrees, or orders made by the Supreme Court prior to September 1, 1914, when the new Surrogates' Law went into effect.

The application will therefore be denied.