In the Matter of the Abrogation of the Adoption Proceedings of ELMER F. McDEVITT and Others, Infants under the Age of Twelve Years.

MARY E. McDEVITT, Foster Parent, Appellant; KATHLEEN McDEVITT, Mother, Respondent.

Second Department, January 19, 1917.

Parent and child — adoption — abrogation of voluntary adoption — consent of foster parent — jurisdiction — respective powers of county judge and Supreme Court.

The voluntary adoption of an infant to which the parent consented and which fully complied with all the statutory requirements, cannot be abrogated by a county judge without the consent of the foster parent, for the abrogation is controlled entirely by the statute, which requires the consent of all parties concerned.

The powers of the county judge in the premises are strictly statutory, but, *it seems,* that the Supreme Court in the exercise of its equity jurisdiction may annul an adoption which violates equitable principles, and has ample power at law and in equity to promote the welfare of a child, notwithstanding a legal adoption.

APPEAL by Mary E. McDevitt, foster parent, from an order of the county judge of Kings county, entered in the office of the clerk of said county on the 26th day of June, 1916, abrogating an order made by said judge on the 24th day of April, 1915, in the original adoption proceedings herein.

*Hugo Hirsh* [*Francis J. Hogan* with him on the brief], for the appellant.

*T. J. Molloy,* for the respondent.

STAPLETON, J.:

A county judge made an order, the decretal provision of which reads:

" Ordered, that the adoption proceedings of the said infant Elmer F. McDevitt be and the same are hereby abrogated, and the order of adoption herein dated April 24th, 1915, be vacated and set aside and that the said infant Elmer F. McDevitt be restored to the care and custody of the petitioner Kathleen McDevitt, the mother of said infant, with costs to the said petitioner in the amount of Twenty-five Dollars to abide the event of an appeal taken herein."

Mary E. McDevitt, the foster parent, appeals. Kathleen McDevitt is the mother of the infant, and the appellant is the sister of Kathleen's deceased husband. There are two other children, who were adopted at the same time, in the same cir cumstances, in several applications, and their status is affected by this appeal, the decision of which is, by stipulation, to apply to their cases. Mary is an assistant principal in a public school. She and her sisters, one a school teacher and one a housekeeper, abide together. The children are in that home. Kathleen's husband died March 11, 1915. His children were then under twelve years of age. Her husband left her dependent upon her earning capacity to support her children and herself. She had no employment. The appellant would take the children could she adopt them. The mother, having no practical alternative, signed a consent. She attempted to have her attorney obtain an agreement whereby she could visit her children. She wished to have it reduced to writing. He failed. His recollection of his conversation with appellant is: " Q. Did you come to any understanding with Miss McDevitt in regard to Mrs. McDevitt seeing these children ? A. My recollection of the conversation is I told Miss McDevitt that the mother was opposed to parting with her children, and I said, in order to get her to be complacent and agree for the best interests of the children, I wanted to know if she would do anything to wean away these children from her, and if she would let this mother see the children at reasonable times, and she said she would, and then on that advice, on that statement, I told — Q. Was it dependent upon that statement that Mrs.

McDevitt signed the consent ?   A.  I could not say that.   *  *  *
Q.  As a matter of fact, there was such an agreement made ?
A.  I stated the conversation."

It is conceded that respondent understood the purpose of the
papers she signed.   The children were adopted April 24, 1915.
She was permitted to testify that her consent depended upon
her being permitted to see her children at reasonable times.   On
May 8, 1915, she obtained employment in Detroit from Mr.
Henry Ford.   In June she returned to New York and had an
unpleasant experience with appellant.   She returned to her
work in Detroit, and in October following she was transferred
to the Ford agency in Brooklyn.   She visited her children twice
and her visits were thereafter refused.   Her annual income is
$1,500.   Neither the judge nor the appellant was deceived.   A
promise to the mother may have been broken.   The impulse
of the county judge to give the children to their mother is
natural.

There is no proof of fraud in the proceeding for adoption,
and it is unnecessary to determine the power of a county judge
in the same proceeding to vacate an order allowing and con-
firming an adoption if fraud in procuring it be established.
There is no jurisdictional defect in the proceeding.   There is in
the record a consent which reads:

"I, Kathleen McDevitt, mother of Elmer McDevitt, the
infant child mentioned in the annexed petition,

"Do HEREBY CONSENT that an order may be made by a
Surrogate of the County of Kings, State of New York, allow-
ing and confirming the adoption of said Elmer McDevitt as
prayed for in the annexed petition and directing that hence-
forth said Elmer McDevitt shall be regarded and treated in all
respects as the child of Mary McDevitt, the foster parent
named in said petition."

There is an agreement which reads:

"AGREEMENT, made this 24th day of April, 1915, by and
between MARY McDEVITT, residing at 271 Lefferts Avenue, in
the Borough of Brooklyn, City of New York, of the one part,
hereinafter called the Foster Parent, and KATHLEEN McDEVITT,
mother of the above-named minor, party of the second part.

"WHEREAS, the said Foster Parent is desirous of adopting,

pursuant to the provisions of the Domestic Relations Law, the above-named ELMER McDEVITT, a male child under the age of twelve years, and to treat such child as her own lawful child, and to extend to such child all the benefits, privileges and rights contemplated by such statute, and

" WHEREAS, said party of the second part has approved and consented to such contemplated adoption of said minor,

" Now, in consideration of the premises the said parties hereby mutually covenant, agree and consent as follows, that is to say:

" First.— Said Foster Parent hereby covenants and agrees to adopt and treat ELMER McDEVITT, the said minor, as her own lawful child, hereby extending and assuring to said minor all rights, benefits and privileges incident to such relation; and hereby assumes and engages to fulfill all the responsibilities and duties of parent in respect to such minor.

" Second.— The said party of the second part hereby consents to such adoption, and covenants and agrees to acquiesce therein, and to refrain from doing or causing to be done any act or thing whatsoever inconsistent or in any way interfering with the rights, privileges or duties of such child when adopted.

" In witness whereof, the parties hereto have severally set their hands and seals the day and year first above written.

> "MARY E. McDEVITT        [SEAL].
> "KATHLEEN McDEVITT        [SEAL]."

Both instruments were presented to the county judge and severally acknowledged before him.  The instruments separately and together complied with the requirements of sections 111 and 112 of the Domestic Relations Law (Consol. Laws, chap. 14 [Laws of 1909, chap. 19], as amd. by Laws of 1913, chap. 569, and Laws of 1915, chap. 352).*  The order allowing and confirming the adoption recites all the facts required. The reference to the surrogate in the one first quoted is immaterial. (Von Beck v. Thomsen, 44 App. Div. 373, 378; affd., 167 N. Y. 601.)

A minor may be deprived of the rights of a voluntary adoption by the following proceedings only :

---

* See Laws of 1916, chap. 453, since amdg. § 112. — [REP.

The foster parent, the minor and the persons whose consent would be necessary to an original adoption, must appear before the county judge or surrogate of the county where the foster parent resides, who shall conduct an examination as for an original adoption.    If he is satisfied that the abrogation of the adoption is desired by all parties concerned, and will be for the best interests of the minor, the foster parent, the minor (if over twelve years of age) and the persons whose consent would have been necessary to an original adoption shall execute an agreement whereby the foster parent agrees, or whereby the foster parent and the minor, if the latter is above the age of twelve years and thereby a necessary party as above required, agree to relinquish the relation of parent and child and all rights acquired by such adoption, and the parents or guardian of the child or the institution having the custody thereof agree to reassume such relation.    The judge or surrogate shall indorse upon such agreement his consent to the abrogation of the adoption.    The agreement and consent shall be filed and recorded in the office of the county clerk of the county where the foster parent resides, and a copy thereof filed and recorded in the office of the county clerk of the county where the parents or guardian reside, or such institution is located, if they reside, or such institution is located, within this State.    From the time of the filing and recording thereof, the adoption shall be abrogated and the child shall reassume its original name and the parents or guardian of the child shall reassume such relation. Such child, however, may be adopted directly from such foster parents by another person, or by either of such foster parents, in the same manner as from parents, and as if such foster parents were the parents of such child.    (Dom. Rel. Law, *supra*, § 116, as amd. by Laws of 1910, chap. 154; Laws of 1913, chap. 38, and Laws of 1915, chap. 352.)    There is no other warrant for the county judge to abrogate a voluntary adoption of a minor. The power is strictly statutory.    (*Carpenter* v. *Buffalo General Electric Co.*, 213 N. Y. 101; *Matter of Ziegler*, 161 App. Div. 589.)    A status was established which the law prescribes may not be changed except by the united action of those necessarily participating in the establishment, whose relationship to the minor remains unaltered.

The county judge in this proceeding is simply a minister of the State. He has no power to dispense with an essential requirement prescribed by the Legislature, to wit, the assent of the foster parent. The Supreme Court, in the exercise of its equity jurisdiction, can annul an adoption which violates equitable principles. (*Matter of Ziegler, supra.*) The Supreme Court has ample power at law and in equity to promote the welfare of the child, notwithstanding a legal adoption. (*People ex rel. Pruyne* v. *Walts*, 122 N. Y. 238, 242; *Matter of Knowack*, 158 id. 482.) The power to permit and to regulate visitation on the part of the mother is, of course, included.

The order from which the appeal is taken is beyond the jurisdiction of the county judge, and upon that ground should be reversed. (*McMahon* v. *Rauhr*, 47 N. Y. 67, 72.)

The order of the county judge of Kings county should be reversed, without costs.

JENKS, P. J., THOMAS and PUTNAM, JJ., concurred; CARR, J., not voting.

Order of the county judge of Kings county reversed, without costs.