A. LUGAR FINLAY, Appellant, *v.* DOROTHEA BLODGETT FINLAY, Respondent.

Second Department, March 13, 1925.

**Husband and wife — custody of children — action by husband, resident of Missouri, to recover custody of children for stated period each year — while parties were residents of this State, defendant left plaintiff and assumed custody of children — remedy to secure custody of children afforded in matrimonial action under Civil Practice Act, §§ 1140 and 1170, and in habeas corpus proceedings under Domestic Relations Law, § 70, not exclusive — Supreme Court has jurisdiction of action — error to dismiss complaint.**

It was error for the court to dismiss the complaint in this action in the Supreme Court by a husband, a resident of Missouri, to recover from his wife the possession

of their children for a stated period during each year, on the ground that the court did not have jurisdiction of the action, for the remedies afforded to a spouse to recover possession of children in a matrimonial action under sections 1140 and 1170 of the Civil Practice Act, and that afforded by habeas corpus proceedings under section 70 of the Domestic Relations Law, are not exclusive, and the Supreme Court has inherent jurisdiction to entertain an action for the purpose of determining in whose possession the children of the marriage should remain, where the parties have separated and do not desire to seek legal separation or divorce, or, as in this case, where the husband cannot, because of his non-residence, maintain an action for separation and his wife has left him while he was a resident of this State, taking the children with her.

APPEAL by the plaintiff, A. Lugar Finlay, from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 13th day of November, 1924, granting defendant's motion made under rule 106 of the Rules of Civil Practice for judgment dismissing the complaint on the grounds that it appears on the face of the complaint that the court has not jurisdiction of the subject of the action and that the complaint does not state facts sufficient to constitute a cause of action.

*Theodore F. Von Dorn,* for the appellant.

*Louis J. Wolff* [*Harding Cowan* with him on the brief], for the respondent.

KELBY, J.:

The parties, husband and wife, are living apart. The husband brought this action in equity to recover the custody of the two children. The defendant moved to dismiss the complaint upon the grounds: (1) That it appeared upon the face of the complaint that the court had not jurisdiction of the subject-matter of the action; and (2) that the complaint did not state facts sufficient to constitute a cause of action. The Special Term granted the motion and the plaintiff appeals.

The parties were married in Bronxville, Westchester county, in August, 1916. They have two sons. One of the boys was born in May, 1917; the other, in July, 1918. For more than a year immediately prior to April 25, 1923, as the complaint alleges, the plaintiff was a resident of Westchester county. From and after that date he has been, and now is, a resident of St. Louis, Mo.

The complaint states that in the latter part of December, 1922, the defendant expressed a desire to go with her two sons and her mother to St. Petersburg, Fla., for a visit of three months. The plaintiff consented, and thereupon, and on or about the 28th of December, 1922, the defendant and the children went to Florida. At the end of three months they returned to Bronxville, but the

defendant, instead of going to her home, went with the children to the home of her mother and has since refused to cohabit with the plaintiff. On or about the 17th of April, 1923, the defendant demanded that plaintiff enter into a separation agreement with her, and that he grant her the sole custody and control of the children. The plaintiff refused, giving as reasons his deep affection for his wife and children and his desire to preserve the family ties. Another reason stated was that the agreement proposed by the defendant contained the statement, claimed by plaintiff to be untrue, that the parties had theretofore separated and were living apart as the result of differences and disagreements.

Because of the worry arising from his domestic troubles, the plaintiff, as he alleges, became mentally depressed and unfit to perform the duties of his employment. He resigned his position on or about the 25th of April, 1923, and left for St. Louis, Mo., where he took up residence with his parents. On or about the 9th of May, 1924, after recovering from an attack of melancholia, he proposed to his wife, by letter, that she come to St. Louis with the children and make her home with him. The defendant ignored his request and maintains exclusive custody of the children " in utter disregard of the rights and privileges of the plaintiff in the premises." The prayer for relief is that inasmuch as the defendant has stated her intention to live separate and apart from the plaintiff, has ignored his request that she accept the home he has offered to provide for her in St. Louis, and has maintained, against his wishes, sole custody of the children, a decree be made and entered granting him the custody of them " during fixed periods each succeeding year."

It is the contention of respondent that the power of the court in relation to the custody of children is always exercised (1) in connection with a matrimonial action, under sections 1140 and 1170 of the Civil Practice Act, or (2) by habeas corpus under section 70 of the Domestic Relations Law.

Section 1170 of the Civil Practice Act provides a means of obtaining the custody of children in an action for a divorce or separation, or after final judgment in such an action. But the plaintiff, even if willing to bring such an action in this State, is precluded from so doing by section 1162 of the Civil Practice Act, which provides that an action for separation may be maintained where both parties are residents of the State when the action is commenced, or where both parties were married within the State and the plaintiff is a resident thereof when the action is commenced. Section 70 of the Domestic Relations Law provides, by habeas corpus, a remedy, separate from an action for divorce or separation,

when the party seeking custody is "an inhabitant" of the State. Section 1140 of the Civil Practice Act provides for the acquiring of custody in an action for annulment. If these statutory provisions are to be regarded as exclusive, then where the party seeking custody is either unwilling to bring an action for a separation, or, by reason of non-residence, is precluded from bringing it, he or she is deprived of all remedy. I believe that such was not the intent of the Legislature; and if it was the intent it should not be permitted to prevail.

The keynote of all the cases seems to be that the paramount consideration is the welfare of the child. The leading case in this State is *Matter of Knowack* (158 N. Y. 482). The question there was whether children committed to a charitable institution as destitute children under section 291 of the Penal Code,* because of the intemperance and neglect of their parents, could be restored to their parents by virtue of the general equitable powers inherent in the Supreme Court. At the time the petition was filed the parents had reformed and were able and willing to resume parental control. Counsel for the institution contended that the only way by which it could be deprived of custody, in the absence of proof of misconduct on the part of its agents or servants, was by an appeal or by a habeas corpus proceeding. The Court of Appeals, Judge BARTLETT writing, held that the Supreme Court had power to grant relief by petition. The court said (p. 487): "The single question presented by this appeal is whether the Supreme Court of the State of New York, having general jurisdiction in law and equity, and being vested with all the jurisdiction which was possessed and exercised by the Court of Chancery in England at the time of our separation from the mother country, except as modified by the Constitution and statutory provisions (Section 217, Code Civil Pro.),† has power to intervene in this case and restore these children to the custody and care of their parents. * * *. Chancellor KENT said that ' Courts of justice may, in their sound discretion, and when the morals or safety or interests of the children strongly require it, withhold the infants from the custody of the father or mother and place the care and custody of them elsewhere.' (2 Kent's Com. 205.) * * *. In later cases it has been held that considerations affecting the health and welfare of a child may justify the court in withholding the custody of it temporarily even from the father acting as its legal guardian, and that they were so purely matters of discretion with the court of original jurisdiction that this court will not review the conclusion thereon unless some

---

* Now Penal Law, § 486.—[REP.

† Now Civ. Prac. Act, § 64.—[REP.

manifest error or abuse of power is made to appear. * * *. It is true that the petition in this case is an appeal to the general equitable powers of the court and is not filed in the statutory proceeding, but it is evident that whether, in the Supreme Court, or based upon the statute, the questions controlling are the same, to wit, the best interests of the child and the ability of the parent, both moral and financial, to discharge his duty in the premises."

In *Wilcox* v. *Wilcox* (14 N. Y. 575) a mother sought, by petition, to recover her child from its grandfather, who had been appointed its guardian because of the mother's ill-health and the father's intemperance. A Supreme Court justice, sitting in chambers, granted the petition, and the grandfather's appeal finally reached the Court of Appeals, where the decision was affirmed. In deciding the case that court said (p. 578): " The Judiciary Act of 1847 declares that the Supreme Court shall possess the same powers and exercise the same jurisdiction as was then possessed by the Supreme Court and Court of Chancery; and that the justices of said court shall possess the powers and exercise the jurisdiction then possessed by the justices of the Supreme Court, chancellor, etc., so far as the powers and jurisdiction of said courts and officers should be consistent with the Constitution and the provisions of that act. (Laws of 1847, 323, § 16.)* Certainly there was no intention in this law to abridge any of the powers exercised before by the chancellor, or to prevent the justices of the present Supreme Court from exercising any powers which the chancellor before exercised, and in the manner and at the times in which he exercised it. Unrestricted as his jurisdiction was as to time and place, so it was to continue and to pass to the present Supreme Court and its justices."

In the English case of *The King* v. *De Manneville* (5 East, 220), quoted in *Mercein* v. *People* (25 Wend. 64), the mother of the child had separated from the father because of ill-treatment. The father was not only a foreigner, but an alien enemy. The court refused to restore the child to its mother, although it had been taken from her forcibly by the father. Later the lord chancellor made an order (*De Manneville* v. *De Manneville*, 10 Ves. 52) restraining the father from removing the child from the kingdom. He based the order upon the ground that the child was a British subject, a ward of the court, and the father an alien enemy. The chancellor nevertheless refused to restore the child to its mother, the reason of his refusal being that she had voluntarily separated herself from her husband.

---

* Laws of 1847, chap. 280, § 16.— [REP.

*Matter of King* (42 Hun, 607) was an appeal from an order removing a child from the custody of its testamentary guardian. The proceeding was by petition. The General Term held that this was " one of the peculiar proceedings not originating in any legislative act, but prescribed and followed by the court as the best adapted to the necessities of such cases." Quoting from 2 Story's Equity Jurisprudence (5th ed. § 1341), the court also said that where a father does not take proper care of his children, or is himself " in constant habits of drunkenness and blasphemy, * * * or that his domestic associations are such as tend to the corruption and contamination of his children, or that he otherwise acts in a manner injurious to their morals or interests * * * the Court of Chancery will interfere and deprive him of the custody of his children, and appoint a suitable person to act as guardian and take care of them and superintend their education." It was held that since the court had power to deprive the father of custody it also had the power to deprive a testamentary guardian of custody.

In *People ex rel. Williams* v. *Corey* (46 Hun, 408, 410) it is said: " What a justice may do out of court depends upon the statute. No statute, however, is necessary to authorize the court to exercise its equity jurisdiction, conferred by the Constitution, over the custody of infants in the same way that the chancellor did, namely in court at chambers."

Surrogate FOWLER, writing in *Matter of Littmann* (88 Misc. 403); states: " The Supreme Court is a constitutional court, possessed since 1846 of the general jurisdiction in equity exercised by the Court of Chancery of New York for 150 years. One branch of this jurisdiction extends to the custody and care of infants and their property and estates. Such jurisdiction is ancient, well established and perfectly protected by the Constitution of the State. * * *. The Legislature has no power to deprive the Supreme Court of such jurisdiction or to impede or impair it in any way." (See, also, *People ex rel. DeLaney* v. *Mount St. Joseph's Academy,* 198 App. Div. 75, 82; *Matter of McDevitt,* 101 Misc. 588; 176 App. Div. 418; *Matter of Stewart,* 77 Misc. 524.)

The cases cited by the respondent do not seem to me to hold to the contrary.

The order dismissing the plaintiff's complaint should be reversed on the law, and the motion denied.

KELLY, P. J., RICH, JAYCOX and YOUNG, JJ., concur.

Order reversed on the law, and motion denied.