196 So. 713

**STATE et al. v. BLACK.**

6 Div. 645.

Supreme Court of Alabama.

May 16, 1940.

Rehearing Denied June 6, 1940.

Thos. S. Lawson, Atty. Gen., Geo. Lewis Bailes, Circuit Sol., Ernest L. Hargrave, Sol. of Juvenile and Domestic Relations Court, Boutwell & Pointer, and Pritchett & Giles, all of Birmingham, for appellants.

Murphy, Hanna & Woodall, of Birmingham, for appellee.

646

After much pleading, discussion of respective counsel, hearing of the evidence under the original petition and answer, and special plea as amended by Mary Collett Black (mother of the child) by way of her special appearance in the Alabama Court, a decision was rendered.

The holding was that the State of Alabama was not entitled to the relief as prayed in the amended petition, that such petition should be dismissed and that the said infant, Paula Black, should be discharged and also that the petitioner or respondent, Mary Collett Black, was entitled to the relief as prayed for in her said petition, or answer, or special plea as so amended, by way of her special appearance, filed in this cause as an independent defense to the original petition as amended and filed in the cause by the State of Alabama at the instance of Ormond O. Black, father of the child.

The State of Alabama became a party by intervention of its due officials and brief has been filed here by the Attorney General, since the question presented by the special appearance of the mother was that of comity or superior jurisdiction as between the State of New York and the State of Alabama.

The Domestic Relations Court created by Act No. 478, approved September 13, 1935, Acts 1935, pp. 1012–1030. has the jurisdiction and powers of a court of equity, except as limited by said act, in respect to "The disposition, custody, control or protection of *delinquent, dependent, or neglected children*," *resident within its territorial jurisdiction.* The child in the case at bar, as appears from the undisputed evidence, was not actually residing in Jefferson County, Alabama, when the proceeding was instituted in the local court, but had acquired a residence, with appellant's consent, in another jurisdiction, where it was being supported and cared for by the mother, and appellant wrongfully removed it therefrom for the purpose of giving the court of domestic relations of Jefferson County jurisdiction. He did not come with clean hands, and if the true state of the case had been made known to the local court, it would no doubt have declined jurisdiction, and the circuit court on appeal, when the case was triable de novo, had the right to decline jurisdiction to determine the child's custody, and leave that to the jurisdiction

THOMAS, Justice.

The appeal presents the status quo of a little girl of tender years, the subject of litigation conducted by her parents.

It is well understood by the decisions of this court that such judgment should be rendered as is for the best interest of the child without undue regard to technical pleading.

The respondent mother attempts to defeat the proceeding in the Alabama court by setting up a judgment of a foreign state rendered ad interim after the child had been taken to another jurisdiction by the consent of the parents, and then to another jurisdiction without the consent of the respective parents.

of the courts of the child's adopted residence.

The provisions of the law in the State of New York have been presented and it may be said that under Section 70, Art. 5 (Consol.Laws, Chapter 14), of the Domestic Relations Law of New York, in habeas corpus proceedings instituted by one parent against the other of an infant child detained for the State Supreme Court to determine its legal custody, "no prima facie right to the custody of the child [is] in either parent, but the court determines solely what is for the best interest of the child, and what will best promote its welfare and happiness, and makes award accordingly." The court so acts within its constitutional and statutory equity jurisdiction to regulate the custody of the infants found residing within the limits of that sovereign state for the protection due by it to the incompetent and helpless child, though its domicile be elsewhere. Sec. 1, Art. VI, N. Y. State Constitution, and said statute; McKinney's Consolidated Laws of N. Y., Chapter 14, Art. 5, § 70; Finlay v. Finlay, N. Y. Court of Appeals, July 15, 1925, opinion by Judge Cardozo, 240 N.Y. 429, 148 N.E. 624, 40 A.L.R. 937; Finlay v. Finlay, 212 App.Div. 786, 208 N.Y.S. 585; Harrison & Saunders v. Harrison, 20 Ala. 629, 56 Am.Dec. 227.

█ Full faith and credit under Section 1 of Article 4 of the Constitution of the United States must be given the acts and judicial proceedings of a sister state, which has rightfully assumed jurisdiction to protect a child as an infant within the jurisdiction of that state and court and which child thereby became a ward of that court. The courts of Alabama, when that child is wrongfully brought into their jurisdiction, recognizing the sovereign authority of a sister state in respect thereto, as a matter of comity, will refuse to deal with the question relating to the future welfare of the child as same may be controlled by alleged changed conditions of the rival contestant as to the child's custody; but will honor, respect and enforce the asserted rights of the mother of such child, armed with a duly authenticated decree of that court of a sister state with jurisdiction of the parent of the child in awarding the child to her as the agent and trustee, of the court and the sovereign state of New York, entitling her to the custody of the child for the purpose of

returning her to that jurisdiction for that court's further dealings, if any there should be, with respect to the proper consideration of the child's welfare. Burns v. Shapley, 16 Ala.App. 297, 77 So. 447; Kugle v. Harpe, 234 Ala. 494, 176 So. 617; Jos. Joseph & Bros. Co. v. Hoffman & McNeill, 173 Ala. 568, 56 So. 216, 38 L.R.A.,N.S., 924, Ann.Cas.1914A, 718; Parker v. McLain, Executrix, etc., 237 U.S. 469, 35 S.Ct. 632, 59 L.Ed. 1051, 28 U.S.C.A. § 344, Judicial Code, § 237.

We prefer to advert to the decision by Mr. Chief Justice Cooley in the case of Maclean v. Speed, 52 Mich. 257, 258, 18 N.W. 396, 397, involving the issuance of a writ of prohibition, when he said: "It is a familiar principle that when a court of competent jurisdiction has become possessed of a case its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of, and no court of co-ordinate authority, is at liberty to interfere with its action. The principle is essential to the proper and orderly administration of the laws; and, while its observation might be required on the grounds of judicial comity and courtesy, it does not rest upon such consideration exclusively, but is enforced to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process. If interference may come from one side, it may from the other also, and what is begun may be reciprocated indefinitely. The country has witnessed some such conflicts in which federal and state courts of coordinate powers have unguardedly or unadvisedly undertaken to hamper or restrain each other's actions, and the mischief of which such cases are suggestive are quite as likely to arise when courts existing as part of the same system intrude with their process upon each other's authority. The writs prayed for should issue."

The above authority was adopted by the Supreme Court of Alabama in Ex parte Burch, 236 Ala. 662, 184 So. 694, 697. Mr. Justice Knight writing for the court said: "And this court in the case of Gay, Hardie & Co. v. Brierfield Coal & Iron Co., 94 Ala. 303, 11 So. 353, 16 L.R.A. 564, 33 Am.St.Rep. 122, in an opinion by Coleman, J., said (page 359): 'All the authorities recognize the importance of carefully preserving the boundary line between courts of concurrent jurisdiction, in order to prevent conflicts, and to preserve

in harmony their relations to each other. * * * To prevent abuse of the principle, and the successful perpetration of injustice or fraud, through forms of law, courts accord to suitors and litigants all necessary latitude, and they are not restricted to any one forum for the adjudication of any question or right, provided only that such adjudications are not upon questions pending in another concurrent court which had prior jurisdiction, and provided that its writs or process shall not hinder the performance of any lawful mandate of such concurrent court, or interfere with the possession of any subject-matter then in ·germio legis.' Many authorities could be cited in support . of this proposition, but we deem it unnecessary, in view of the universality of the rule, to further cite authorities. But see 15 C.J. § 583, pp. 1134 and 1135, and authorities cited in notes thereunder."

The pleading and evidence fully delineate the tragic culmination of a married life, making this infant of tender years the unfortunate subject of legal controversy in two great jurisdictions of the American Union. It is sufficient to say that the record has been carefully considered touching this child and its best interest under the rule of comity obtaining under the Constitution and statutes of the United States as effecting and binding the officials of the State of New York and those of Alabama as to the rights of the respective parents and of their infant daughter.

██ In writing for the court in McDaniel v. Youngblood, 201 Ala. 260, 77 So. 674, 675, the writer observed that it was recently held that matters of importance affecting the welfare of an infant may become the subject of chancery jurisdiction and that it is immaterial whether it is brought to the attention of the court by bill, petition or habeas corpus. The chancery court has jurisdiction independent of statute. In such proceedings the paramount consideration "is the well-being of the infant." To that end such decrees are kept open to subsequent terms of court for future direction or modification as from time to time the court may deem to be of the best interest of an infant or ward and·this right was properly provided for in the decree in the McDaniel case, supra, committing the minor child to the custody and control of Mary L. McDaniel "until the further order of the court."

In the McDaniel case, supra, however, the question of comity and primary jurisdiction as between the courts of two great commonwealths of our Union was not presented, as is the case here. The trial court regarded this issue as presented by the mother in her special appearance by way of plea and answer and we will now consider the same.

Before proceeding to a discussion of the facts of this case, in detail, we advert to the recent decision of Justice Gardner in McRee v. Russell, 194 So. 827, 828,[1] wherein it was held by this court that: "* * * Anything like a comprehensive and detail discussion of this evidence is not considered practicable, and would extend this opinion to undue length. Indeed, in cases resting upon mere issues of fact for determination, it has been the policy of this Court, especially since the passage of the Act of 1915, not to enter into an analysis or discussion of the evidence in detail (Acts 1915, page 594; section 10336, Michie's Code; Harris v. Bowles, 208 Ala. 545, 94 So. 757; Williams v. Ellington, 233 Ala. 638, 172 So. 903), nor would it serve any useful purpose here. The parties to this litigation, therefore, must rest content with a very general observation and statement of our conclusion."

See also the recent decision of Justice Gardner in the case of Elson v. Prigden, ante, p. 678, 195 So. 889.

There are several matters ·entering into the decision in this case which would serve no good purpose to detail in particular. In general, however, it may be observed (1) the parents of this child agreed that the mother might take her away from the State of Alabama to the domicile of the grandmother ·in Connecticut, which was done. ·(2) The mother thereafter, without the knowledge or consent of the father, removed the child to the City of New York and placed her in a home for children, the surroundings of which were entirely fitting and proper for the best interest of the child. (3) The father learning the habitat of the child in New York, without the knowledge or consent of the mother, took her and returned with her to Birmingham, Alabama. (4) He then in Alabama initiated judicial proceedings in the juvenile court touching the

---

[1] Ante, p. 343.

child as a juvenile dependent. Thus, as the father, he submitted to the jurisdiction of that court. This action was taken without the knowledge or consent of the mother, who was beyond the confines of the State of Alabama at the time and not then or there present, but who was made a respondent to such proceeding. (5) The child was permitted with an attendant to go to the park where the mother found her, and without the knowledge of the pending court proceedings in Birmingham (according to her statement but contrary to the statement of the attendant of the child) carried her to Atlanta. While in Atlanta the mother was informed by telephone from Birmingham of the action of the Alabama court touching the child. (6) With such knowledge acquired in Atlanta, as she admits, but denying to have been so informed in Birmingham, she proceeded with the child to New York and initiated appropriate proceedings there for the custody and control of the infant, making the father (who had taken and concealed said infant in New York) a party. (7) The father appeared in New York and was brought within the presence and jurisdiction of the court, whereupon he submitted himself to said court's jurisdiction. (8) The father thereafter took the child from New York to New Jersey and thence to Birmingham, Alabama, and returned her to the accredited authority or agent of the juvenile court where he had initiated the original proceedings, as we have indicated. (9) The facts found by the New York Court are recited at length in the decree or judgment rendered.

In Finlay v. Finlay, 240 N.Y. 429, 148 N.E. 624, 625, 40 A.L.R. 937, Mr. Justice Cardozo said for the court: "The jurisdiction of a state to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. Woodworth v. Spring, 4 Allen, (Mass.) 321, 323; White v. White, 77 N.H. 26, 86 A. 353; Hanrahan v. Sears, 72 N.H. 71, 72, 54 A. 702; Re Hubbard, 82 N.Y. 90, 93. For this, the residence of the child suffices, though the domicile be elsewhere. Re Hubbard, supra. But the limits of the jurisdiction are suggest-

ed by its origin. The residence of the child may not be used as a pretense for the adjudication of the status of parents whose domicile is elsewhere, nor for the definition of parental rights dependent upon status. * * *"

This is, in effect, the decision of this court in the recent cases of Calkins v. Calkins, 217 Ala. 378, 115 So. 866; Ex parte Burch, 236 Ala. 662, 184 So. 694.

It results from the foregoing that the comity of states is presented and the superior jurisdiction of the court of the State of Alabama is urged by counsel for the father and (for the State of Alabama) by the Attorney General. The mother, in her pleading in the Alabama Courts, makes special appearance, and through her counsel urges that the rule of comity prevails and supports the superior jurisdiction of the New York Courts, under the rule obtaining in such matter, and that the New York Court had passed upon the best interest of the child in awarding her to the custody of the mother.

Because the child was brought back into Alabama in violation of a judgment of the court of New York which had jurisdiction in that connection, and because that court had jurisdiction also to make any change in the order for the custody of the infant, this court will not now interfere with an exercise by that court of such jurisdiction. We are of the opinion and hold that the judgment or decree of the circuit judge, in equity sitting, is free from error and that the same should be and is affirmed.

Affirmed.

BROWN, FOSTER, and LIVINGSTON, JJ., concur.

On Rehearing.

THOMAS, Justice.

The case has been carefully considered by all the Justices of the court and pages two and three [ante, p. 646, 196 So. 714] have been rewritten to more clearly state the pertinent facts presented on this appeal. The court is of opinion that the application for rehearing should be overruled. It is so ordered.

Application for rehearing overruled.

All the Justices concur.