63 So.2d 591

### SAPPINGTON v. FORT.

4 Div. 716.

Supreme Court of Alabama.

Dec. 4, 1952.

Rehearing Denied March 19, 1953.

A. R. Powell, Jr., Andalusia, and Donald F. Colquett, Opp, for appellee.

E. C. Boswell and Neil Metcalf, Geneva, for appellant.

LIVINGSTON, Chief Justice.

Ann and Gilbert Sappington were married May 1, 1943. On January 22, 1945, a son was born. The couple separated in April 1948. On April 30, 1948, Mrs. Sappington, through her attorney, filed in the District Court within and for the county of Tulsa, State of Oklahoma, a petition for separate maintenance (later amended seeking an absolute divorce), alimony, and custody of the child. By subsequent amended pleadings in the cause, it appears that the child, from the date of the separation in April, 1948, until the date of the final decree of the Oklahoma District Court, dated May 31, 1951, was in the custody of the paternal grandmother and stepgrandfather, Mrs. Neal Fort and Mr. Manley Fort of Tulsa, Oklahoma. The father of the child, Gilbert Sappington, from the date of the separation of the parties until time of the instant hearing, lived at the home of his parents, Mr. and Mrs. Manley Fort.

By the decree of May 31, 1951, the Oklahoma District Court granted Mrs. Sappington, who had returned to Geneva, Alabama, in April, 1948, an absolute divorce, lump sum alimony, and as to the custody of the minor child, decreed as follows:

"The Court further finds that it is for the best welfare of the parties' minor child, Don Sappington, that the exclusive care, custody, and control of said child during the school term, commencing on September 1st of each year and expiring on June 1st of each year, be vested and confided in the grandparents, Mr. and Mrs. Manley Fort, of Tulsa, Oklahoma, and that the plaintiff herein should have the exclusive care, custody, and control of said minor child from the 1st day of June of each year, commencing June 1st 1951, and through the 1st day of September of each year hereafter, and that during the period of time that the plaintiff has the exclusive care, custody, and control of said minor child that the defendant should pay to the plaintiff the sum of $40.00 per month for the education and maintenance of said minor child. The Court further finds that by virtue of the fact that the plaintiff now resides in Geneva, Alabama, she should be permitted to remove temporarily said child to that State, *subject, however, to the continuing jurisdiction of this Court,* and that the defendant herein should pay for the transportation of said minor child from Tulsa, Oklahoma, to Geneva, Alabama, and return from Geneva, Alabama, to Tulsa, Oklahoma, *without any obligation on the plaintiff to pay any part of said expense."* (Emphasis ours.)

No appeal was taken from this decree and the parties accepted it as binding and abided its terms. Indeed, in the year 1951, the child was delivered to appellant on the appropriate date and she redelivered the child on the date fixed by the decree. On June 1, 1952, appellant's father traveled from Geneva, Alabama, to Tulsa, Oklahoma, for the purpose of securing the child pursuant to the terms of the Oklahoma decree. On June 1, 1951, the child was ill and though there is some doubt as to the exact nature of the child's illness, we think the record abundantly clear that the child was ill at the time, and Mr. and Mrs. Manley Fort refused under the circumstances to deliver the child to appellant's father upon advice of counsel and after the child had been examined by a doctor. Subsequently, on June 25, 1951, upon the child's recovery from his illness, the boy was delivered to the appellant in Tulsa and returned to Geneva, Alabama.

By the terms of the Oklahoma decree, the child was to be returned by the mother on September 1st of each year. On September 1, 1952, the mother entered the child in the public school of Geneva County and from her testimony, this was done because no request for the child had been made by Mr. or Mrs. Fort, and appellant had no money to return the child to Tulsa. There is other evidence, however, tending to show that the attorneys for the respective parties were carrying on correspondence relative to the child's return to Oklahoma.

On September 9, 1952, Manley and Neal Fort filed in the District Court, Tulsa County, State of Oklahoma, their petition for instructions, setting forth the fact that Ann Sappington had refused to redeliver the child on September 1, 1952, as required by the decree of the same court rendered May 31, 1951, and on September 9, 1952, that court authorized and instructed the petitioners or either of them to bring such proceeding as might be necessary to recover the child in any court having jurisdiction.

On the 12th day of September, 1952, Mrs. Neal Fort filed a petition for writ of habeas corpus in the Geneva Circuit Court to recover the custody of the minor. On September 17, 1952, after a full and complete hearing on the matter, the trial judge rendered a decree and ordered appellant to deliver the child to the petitioner on October 20, 1952, and specifically decreed that petitioner, Mrs. Neal Fort, was entitled to the custody of the child according to custodial award rendered by the District Court entered on May 31, 1951.

It is from that decree of the Circuit Court of Geneva County, the appellant prosecutes this appeal. On October 15, 1952, we granted supersedeas pending the appeal.

Much is contained in the record as to the failure of Gilbert Sappington to pay the cost of the two trips necessary to secure the child and also that only two payments of $40 each were made during the period June 1, 1952 to September 1, 1952, instead of the usual three payments of $40 each. It does appear, however, and is admitted by appellant, that the father of the minor remitted $260 to cover cost of the two trips from Geneva to Tulsa, and the failure to remit a third payment of $40 seems to have been due to the fact that the child was ill during the greater part of June, 1952, and remained with Mr. and Mrs. Fort. All of these matters, we think, could be adequately disposed of upon petition and proof in the proper forum in Oklahoma. That court would certainly use its processes to compel Gilbert Sappington to pay all monies due under the terms of its decree.

When the jurisdiction of the equity court of Alabama is invoked for the purpose of determining the custodial care of a minor, the minor becomes a ward of the court and the paramount issue to be determined is the welfare of the child. Hayes v. Hayes, 192 Ala. 280, 68 So. 351; Moss v. Ingram, 246 Ala. 214, 20 So.2d 202; Lawrence v. Sawyer, 250 Ala. 577, 35 So. 2d 207, 208.

As was stated in Lawrence v. Sawyer, supra, "it has long been the settled rule in this jurisdiction that a minor is regarded as the ward of a court of chancery, and that court will not permit his well being to be jeopardized by any judgment in a previous contest concerning his custody and care." The foregoing applies with equal force to foreign decrees, such as the one here involved where the court retains jurisdiction to make other orders regarding the custody of children. State of New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133.

Then, too, our courts will give relief upon a showing of changed circumstances or upon peculiar circumstances which create an emergency as to the immediate welfare of the child. Ferguson v. State, 251 Ala. 645, 38 So.2d 853; Ex parte State ex rel. McLaughlin, 250 Ala. 579, 35 So.2d 507. The changed circumstances do not necessarily have to be subsequent to the decree but may be based upon matters discovered though not disclosed when the original decree was entered. Ex parte State ex rel. McLaughlin, supra.

But here, as we view the record before us, the facts fall far short of showing any emergency or unusual circumstances as would necessitate invoking the power of the equity court to protect the minor's welfare with utter disregard of the decree of the Oklahoma Court. It is insisted in brief that changed conditions require the court to grant relief. The Oklahoma Court after a hearing in May 1951, entered its decree. Upon what evidence this decree was entered, we have no way of knowing, since it does not appear in the record before us. The record before us shows no changed conditions.

532

The Oklahoma Court found that Mr. and Mrs. Manley Fort were suitable persons to have part-time custody of the child. It also found the mother to be a suitable person to have part-time custody. From the evidence adduced at the trial in the lower court, we could not escape the same conclusion. The record discloses that during both the school term and the summer months, the child has a good home. His education and moral training are well provided for by all persons having custodial duties. The child testified before the trial court and his testimony is clear that in both homes he is well treated; that he loves and is loved by both his mother, father, and paternal and maternal grandparents. He testified that he preferred to live with his mother. His desire in this regard seems to stem from a natural, genuine affection for his mother, which is not unusual in a child of his years. Certainly, his feeling in this matter is not the result of any mistreatment or misconduct on the part of his father or the paternal grandparents. While a child's choice as to which home he would prefer to remain in should be given due regard, his wishes in such a matter cannot serve as the sole criterion upon which a court must base its decision.

The Oklahoma Court had jurisdiction to render its decree, and accordingly such decrees are ordinarily entitled to receive full faith and credit in the courts of this state, and the mere fact that a child was, pursuant to the decree of Oklahoma, brought into the state of Alabama, does not serve to defeat the jurisdiction of the Oklahoma Court. State v. Black, 239 Ala. 644, 196 So. 713; Moss v. Ingram, supra.

There being no emergency existing as to the immediate welfare of the child, nor any substantial showing of changed conditions as to parties since the rendition of the original decree of custody by the Oklahoma Court, we conclude that the case should stand affirmed.

Affirmed.

FOSTER, SIMPSON and GOODWYN, JJ., concur.