152 So.2d 128

**DEPARTMENT OF PENSIONS AND SECURITY**

v.

**Joseph Harris OSWALT.**

**I Div. 955.**

Supreme Court of Alabama.

April 4, 1963.

MacDonald Gallion, Atty. Gen., Julius Cage, Jr., and Robt. M. Hill, Jr., Asst. Attys. Gen., for appellant.

A. J. Seale, Mobile, for appellee.

LIVINGSTON, Chief Justice.

This is an appeal from a decree of the Circuit Court of Mobile County, in Equity, awarding the custody of an infant to Joseph Harris Oswalt.

· The proceedings involve the custody of an infant known as Infant Male Briggs, or Joseph Hunt Oswalt. The following facts are not contraverted:

By order of the Juvenile Court of Mobile County, Alabama, the infant was found to be dependent and destitute and was committed by final order of that court to the State Department of Pensions and Security, a department of the State of Alabama, charged, generally, with the duty of receiving and caring for dependent, neglected and delinquent minor children, and placing such children in suitable family homes. After the Department of Pensions and Security received custody of the infant, Joseph Harris Oswalt (referred to by the witnesses as Jack Oswalt) and Virginia Oswalt, his wife, applied to the Department of Pensions and Security to have the child placed in their home. Following an investigation by the Department of Pensions and Security, the child was placed with the Oswalts, on August 31, 1959, under the

following conditions: (1) that legal custody of the child was to remain in the state; (2) that the child was in the Oswalt home for a probationary period to determine whether or not he was a proper subject for adoption by the Oswalts and whether or not they were, or would be, proper foster parents for the child. During this period, it was agreed that the child could be removed from the home whenever the State Department of Pensions and Security felt that such removal would be in the child's best interests.

Soon after the child was placed in the Oswalt home, information was received by the Sumter County Department of Pensions and Security (Sumter County was the county in which the Oswalts were living at that time) that Jack Oswalt was drinking heavily and that there was dissension in the home continuously. The Oswalts were advised at that time that if such situation continued, it would be necessary for the child to be removed from their home. For some four to six weeks following this advice, the Oswalts conscientiously attempted to achieve marital harmony in their home, but in December, information was again received that Jack Oswalt was drinking heavily and constantly. The home was again visited in January, 1960, by employees of the Department, and the Oswalts admitted that the information received by the Department was true. Following this visit, the Department of Pensions and Security decided that the best interest of the minor dictated that he be removed from the Oswalt home, and the Oswalts were advised of this decision on January 7, 1960. They refused to deliver the child to the Department.

At 12:30 p. m. on Friday, January 8, 1960, upon a petition filed on behalf of the Department of Pensions and Security, an order was obtained from Hon. Eugene Carter, Circuit Judge of Montgomery County, Alabama, directing any sheriff of the State of Alabama to take the child and return him to the Department of Pensions and Security, and further ordering that

Joseph Harris Oswalt and Virginia Kent Oswalt show cause within ten days of service of summons why the order returning said child to the Department of Pensions and Security should not be made final. In attempting to serve the order, it was found that the Oswalts had moved to Mobile and had there, sometime after 6:00 p. m. on Friday, January 8, 1960, obtained from Hon. Douglas Stanard, Judge of the Circuit Court of Mobile County, Alabama, an order enjoining the Department of Pensions and Security from interfering with their custody of the child. On January 11, 1960, the Circuit Court of Mobile County entered an order giving custody of the child to the Oswalts pending a hearing, and on January 15, 1960, the court denied appellant's motion to dismiss.

On March 8, 1960, appellant filed a plea in abatement in the Circuit Court of Mobile County, in Equity, setting up the fact that a petition had been filed in the Circuit Court of Montgomery County, Alabama, in Equity, by the Department of Pensions and Security, and that Judge Eugene Carter, of the Circuit Court of Montgomery County, in Equity, had ordered the return of the child to the Department of Pensions and Security. This plea was denied. On the same day, an answer was filed, and on March 10, 1960, the cause was submitted on pleadings and proof. On June 23, 1960, the court ordered that the custody of the child be awarded to the Oswalts. The Department of Pensions and Security appealed.

From the record before us, it affirmatively appears that the petition styled In the Matter of Infant Male Briggs was filed in the Circuit Court of Montgomery County, Alabama, in Equity, on January 8, 1960. The petition prayed that the Infant Male Briggs (Joseph Hunt Oswalt), a state ward, be returned to the Department of Pensions and Security. At the time this petition was filed, all the parties to this proceeding, including the Infant Briggs, were within the confines of the State of Alabama. The petition further alleges that the legal residence of said minor child was Montgomery County, Alabama.

It is apparent that the threshold question is whether the exercise of its jurisdiction by the Montgomery Circuit Court, in Equity, prevented the Circuit Court of Mobile County from acting on identically the same matter before final determination of the case by the court first acquiring jurisdiction. Unquestionably, it did.

When a proceeding is instituted to determine the custody of a child, the child at once becomes a ward of the Court. Esco v. Davidson, 238 Ala. 653, 193 So. 308; Campbell v. Sowell, 230 Ala. 109, 159 So. 813; Murphree v. Hanson, 197 Ala. 246, 72 So. 437; Lassiter v. Wilson, 207 Ala. 669, 93 So. 598; Hayes v. Hayes, 192 Ala. 280, 68 So. 351. When such jurisdiction over the child attaches, no other court of equal or concurrent jurisdiction can interfere, and the court which has exercised such jurisdiction *first* has the exclusive right to entertain jurisdiction to a final determination of the cause. Eaton v. Patterson, Stew. & P. 9; Gould v. Hayes, 19 Ala. 438; Wright v. Price, 226 Ala. 468, 147 So. 675; Ex parte Burch, 236 Ala. 662, 184 So. 694; Dorrough v. McKee, 264 Ala. 663, 89 So.2d 77; Vinyard v. Hayes, 30 Ala.App. 595, 10 So.2d 299; Tittle v. Holt, 252 Ala. 388, 41 So.2d 203; Morris v. McElroy, 23 Ala.App. 96, 122 So. 606; 21 C.J.S. Courts § 492, p. 745; 14 Am.Jur., Courts Secs. 243–246, pp. 435–440.

The above rule was discussed in detail in the case of Ex parte Burch, 236 Ala. 662, 184 So. 694, involving a bill for divorce and the custody of two children, in which this court stated:

"It is uniformly held that where two or more courts have concurrent jurisdiction, the one which first takes cognizance of a cause has the exclusive right to entertain and exercise such jurisdiction, to the final determination

of the action and the enforcement of its judgments or decrees.

"Mr. Chief Justice Cooley, in speaking for the Supreme Court of Michigan, in the case of Maclean v. Wayne Circuit Judge, 52 Mich. 257, 258, 18 N.W. 396, 397, which involved the issuance of a writ of prohibition, said: 'It is a familiar principle that when a court of competent jurisdiction has become possessed of a case its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of, and no court of co-ordinate authority is at liberty to interfere with its action. The principle is essential to the proper and orderly administration of the laws; and, while its observance might be required on the grounds of judicial comity and courtesy, it does not rest upon such consideration exclusively, but is enforced to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process. If interference may come from one side, it may from the other also, and what is begun may be reciprocated indefinitely. The country has witnessed some such conflicts in which federal and state courts of co-ordinate powers have unguardedly or unadvisedly undertaken to hamper or restrain each other's actions, and the mischiefs of which such cases are suggestive are quite as likely to arise when courts existing as part of the same system intrude with their process upon each other's authority. The writs prayed for should issue.'

"And this court in the case of Gay, Hardie & Co. v. Brierfield Coal & Iron Co., 94 Ala. 303, 11 So. 353, 16 L.R.A. 564, 33 Am.St.Rep. 122, in an opinion by Coleman, J., said [page 359]: 'All the authorities recognize the importance of carefully preserving the boundary line between courts of concurrent jurisdiction, in order to prevent conflicts, and to preserve in harmony their relations to each other. * * *

To prevent abuse of the principle, and the successful perpetration of injustice or fraud, through forms of law, courts accord to suitors and litigants all necessary latitude, and they are not restricted to any one forum for the adjudication of any question or right, provided only that such adjudications are not upon questions pending in another concurrent court which had prior jurisdiction, and provided that its writs or process shall not hinder the performance of any lawful mandate of such concurrent court, or interfere with the possession of any subject-matter then in gremio legis.' Many authorities could be cited in support of this proposition, but we deem it unnecessary, in view of the universality of the rule, to further cite authorities. But see 15 C.J. § 583, pp. 1134 and 1135, and authorities cites in notes thereunder."

See also Morris v. McElroy, supra.

In the case of Wright v. Price, 226 Ala. 468, 147 So. 675, this court said:

"Courts of equity are the general guardians and protectors of all infants within their jurisdiction, and this has been the law in this state from time immemorial. When a court of equity has properly assumed jurisdiction over a child, that jurisdiction cannot be disturbed, or ousted, or in any way arrested by a resort to any other tribunal. In respect to infants within its jurisdiction, its powers are original, and inherent. Murphree v. Hanson et al., 197 Ala. 246, 72 So. 437. * * *

"In the case of Lassiter v. Wilson, 207 Ala. 669, 93 So. 598, it is said:

"'Where jurisdiction of a court has once attached the right exclusively to pursue and exercise its adequate jurisdiction to complete performance cannot be arrested or taken away by proceeding in another court of like authority. 3 Mich.Ala.Dig. pp. 760, 761, collating the cases. * * *

" 'Jurisdiction, once acquired, cannot be defeated by subsequent events, notwithstanding their character is such as would have prevented jurisdiction originally attaching. 15 C.J. pp. 822–824. The judicial power of our courts of equity to consider and to determine the custody of infants is inherent, not dependent upon statutory authorization. * * *' "

In the instant case, it affirmatively appears that Miss Louise Pittman, as Supervisor of the Division of Foster Home Care and Adoptions, State Department of Pensions and Security, filed a petition entitled In the Matter of Infant Male Briggs in the Circuit Court of Montgomery County, and that said petition was filed by George H. Jones, Register of the Circuit Court of Montgomery County, in Equity, on or before 12:30 p. m., January 8, 1960. The record further shows that Joseph Harris Oswalt filed a petition entitled In the Matter of the Petition for Custody of Joseph Hunt Oswalt in the Circuit Court of Mobile County, and that said petition was filed on or about 6:00 p. m., January 8, 1960, sometime after the child had become a ward of the Montgomery County Circuit Court.

The answer filed by the State Department of Pensions and Security on March 8, 1960, further avers that prior to the institution of the case styled In the Matter of the Petition for Custody of Joseph Hunt Oswalt, a petition was filed in the Circuit Court of Montgomery County, in Equity, praying that said child be returned to the State Department of Pensions and Security, and that Hon. Eugene Carter, as Judge of said court, did accept jurisdiction over said child, that said child thereby became a ward of that court and that said cause is presently pending in the Circuit Court of Montgomery County.

The record before this court also shows that the Infant Male Briggs, described in the petition before the Circuit Court of Montgomery County, is the same child (Joseph Hunt Oswalt) who is the subject of the petition filed in the Circuit Court of Mobile County.

■ Under the authorities cited, supra, and the conclusive evidence contained in the record, the Circuit Court of Mobile County, in Equity, was without authority to entertain any action concerning the custody of Infant Male Briggs (Joseph Hunt Oswalt), and the decree, order or judgment entered by said court is erroneous. Appellant's motion to dismiss and its plea in abatement should have been sustained by the Mobile Court and a judgment should have been rendered in favor of appellant.

■ This court is cognizant of the fact that cases involving child custody are always subject to being opened upon substantial change of circumstances. Sappington v. Fort, 258 Ala. 528, 63 So.2d 591; Barnett v. Harvel et ux., 257 Ala. 600, 60 So.2d 435. It is not the intention of this court to change this established rule of law. But, until the court first assuming jurisdiction enters something in the nature of a final decree, no other court of concurrent jurisdiction may assume jurisdiction. This is not a case where immediate action on the part of the Circuit Court of Mobile County, in Equity, was imperative to preserve or protect the best interest of the child. The Circuit Court of Montgomery County, in Equity, was available and equipped to perform that service as well as the Circuit Court of Mobile County.

The decree of the Circuit Court of Mobile County, in Equity, is reversed and the cause is remanded to that court for the entering of a decree in conformity with the foregoing opinion.

Reversed and remanded.

SIMPSON and GOODWYN, JJ., concur.

COLEMAN, J., concurs in the result as follows:

COLEMAN, Justice (concurring in result).

Under the rule that the pendency of a prior suit is good ground for abatement of a later suit "where the forum of the first action is competent to proceed to a final and valid judgment if the defendant consent to its so proceeding," I concur in holding that appellant's plea in abatement should have been sustained. Orman v. Lane, 130 Ala. 305, 30 So. 441.