# Richmond

## Oliver V. Kessler v. Fauquier National Bank, Administrator, Etc., et al.

May 3, 1954.

Record No. 4185.

Present, All the Justices.

The opinion states the case.

*H. Thornton Davies, A. J. Brent; Christian, Barton, Parker & Boyd* and *Marcus Borchardt,* for the appellant.

*Donovan & Turnbull, Cornelius H. Doherty* and *Philip N. Brophy,* for the appellees.

Hudgins, C.J., delivered the opinion of the court.

■ This appeal involves a second suit instituted in the circuit court of Prince William county, Virginia, by Oliver V. Kessler, hereinafter designated complainant, to determine whether he, as the surviving consort, is entitled to participate in the distribution of the estate of Rose Meredith Kessler. In the first suit he was denied this right on the ground that prior to Mrs. Kessler's death she had obtained a valid divorce from him in Florida. The only additional pertinent allegation in the bill filed in this, the second suit, is that, since the final decree was entered in the first suit, complainant had instituted a separate suit in Florida in which the divorce decree was declared null and void. From a decree declaring that the final decree entered in the first suit by the circuit court of Prince William county was conclusive upon the issues raised in this, the second suit, complainant obtained this appeal.

The pertinent facts are that complainant and Rose Meredith Kessler, both then domiciled in Virginia, were married in 1938. They, while living in Virginia, separated in 1944. On July 17, 1946, Rose Meredith Kessler obtained a divorce in the circuit court of the 11th judicial circuit in and for Dade county, Florida. She died testate on February 7, 1947, and made no provision for her husband in her will, which was duly probated on March 12, 1947, in the circuit court of Prince William county, Virginia. Thomas F. McGlone, Sr., executor named in the will, and the Fauquier

National Bank of Warrenton qualified as executor and administrator, c. t. a. on her estate.

On July 12, 1947, complainant filed a bill in the first suit in the circuit court of Prince William county naming as defendants the executor and administrator, c. t. a., the devisees, legatees, and the heirs at law and next of kin of Rose Meredith Kessler. The pertinent allegation of the bill was that "said complainant is the widower of said decedent and as such entitled to share in estate of said decedent under the statutes of Virginia." The prayer was that "complainant's interest as the surviving consort of Rose Meredith Kessler may be established . . . " .

All the defendants, except one of the legatees, filed a special plea to the bill, in which it was alleged that the "complainant, Oliver V. Kessler, is not the widower of decedent, Rose Meredith Kessler, and is not entitled to share in the estate of said decedent . . . "; and "that the said Rose Meredith Kessler was divorced from Oliver V. Kessler by order of the Circuit Court of the 11th judicial circuit in and for the Dade county, Florida, . . . duly entered on the 17th day of July, A. D., 1946."

Complainant filed a written replication to the special plea, in which it was alleged that "the late Rose V. Kessler was not divorced from the complainant, but that at the time of her death said complainant and said Rose Meredith Kessler were lawfully and legally husband and wife; that the alleged divorce was void and of no effect in the State of Virginia; that the said Rose Meredith Kessler for the thirty or more years immediately preceding her death was a *bona fide* resident of Gainesville, in Gainesville District, Prince William County, Virginia, and never at any time during the said period of thirty years or more a resident of the State of Florida."

The issue thus raised by the special plea and the replication was whether the circuit court of the 11th judicial circuit in and for Dade county, Florida, had jurisdiction of the parties in order to grant the domiciliary party a valid

divorce. On that issue defendants introduced a properly certified copy of the divorce decree and testimony of several witnesses tending to prove that Mrs. Kessler had bought a dwelling in Florida and had moved from Virginia to Florida with the intention of making that State her permanent home. Complainant introduced properly certified copies of the entire record of the divorce proceedings in Florida, other exhibits, his own testimony and that of seven other witnesses in support of his contention that he was not served with process, constructively or otherwise, in the divorce suit, and that Mrs. Kessler had never surrendered her domicile in Virginia and had not moved to Florida with the intention of making that her permanent home.

The trial court, after giving the parties full opportunity to introduce such evidence as they desired to support their respective allegations, entered the following decree as its final adjudication of the issues presented:

"This cause coming on to be heard on the 20th day of January, A. D., 1948, upon the Bill of Complaint filed herein by O. V. Kessler, upon the Special Plea to the Bill of Complaint filed herein by Thomas F. McGlone, Sr., Executor, etc., et al, and upon the replication to the Special Plea filed by the Complainant, O. V. Kessler, and witnesses having been sworn and depositions taken in open court and was argued by counsel, and it appearing to the Court that the said Complainant, O. V. Kessler, was validly divorced in the Circuit Court of Dade County, Florida, by order of that Court bearing date of the 17th day of July, A. D., 1946, and is, consequently, no longer a party at interest as to the Estate of Rose McGlone Meredith Kessler, deceased, it is by the Court, this 20th day of January, A. D., 1948.

"ORDERED AND DECREED that the Special Plea filed by the Defendants, Thomas F. McGlone, Sr., Executor, etc., et al, to the Bill of Complaint in this cause is hereby sustained and the decree of Final Divorce entered by the Circuit Court in and for the County of Dade, Florida, on the 17th day of July, A. D., 1946, is entitled to full faith and credit in this

Court, and the said Complainant, O. V. Kessler, having no further interest in the subject matter of the within cause, the same is hereby dismissed."

This decree was affirmed by this Court on June 15, 1948, 187 Va. lxii, and a writ of *certiorari* to the Supreme Court of the United States was denied on November 8, 1948, 335 U. S. 860. Whether the foregoing decree was right or wrong, it is in Virginia a final determination of the pertinent issues raised or which might have been raised, and as to such issues is binding in any subsequent proceedings between the same parties.

On March 11, 1949, more than four months after the Supreme Court of the United States had denied complainant a writ of *certiorari*, he filed a bill in the circuit court of the 11th judicial circuit in and for Dade county, Florida, against the same defendants, in which he again alleged that Mrs. Kessler, the complainant in the divorce suit, never acquired a domicile in Florida; that no proper process, constructively or otherwise, was served upon him; that the divorce decree entered by that court on July 17, 1946, was null and void; and that he was the surviving husband of Mrs. Kessler.

Some of the defendants in their answer alleged that the former suit instituted by complainant in the circuit court of Prince William county, against the same parties and in which the same issues were raised, constituted a bar to the prosecution of the suit to annul the divorce decree. The Florida court rejected this defense on the ground that: "The courts of Florida have the right to determine whether judgments or decrees which have been entered by them on constructive service were validly entered, and have outlined the procedure by which such determination can be made, and the right of a Florida court to determine whether or not its own jurisdiction has been properly invoked and exercised cannot be barred by what has been determined by the courts of any other state, even in a proceeding between the same parties." *Mabson* v. *Mabson*, 104 Fla. 162, 140 So. 801 (1 & 2), was cited to support this ruling.

The same defendants filed an answer denying the pertinent allegations of complainant's bill. On the issues thus raised, complainant himself testified and introduced several other witnesses and exhibits that he had formerly introduced in his suit in the circuit court of Prince William county, and some additional evidence. Defendants likewise introduced some of the same testimony and exhibits that they had introduced in the circuit court of Prince William county, where the same question had been litigated.

On consideration of the conflict in evidence, the circuit court of the 11th judicial circuit in and for Dade county, Florida, reached a different conclusion from that reached by the circuit court of Prince William county, Virginia, and held, in accordance with complainant's contention, that Mrs. Kessler had not established a domicile in Florida in accordance with the Florida statutes; that she had not caused proper process, constructively or otherwise, to be served upon her husband; and declared that the divorce decree formerly pronounced by it on July 17, 1946, was null and void.

On December 3, 1952, complainant instituted this a separate and independent suit in the circuit court of Prince William county, Virginia, against the same defendants named in the former suit, except that the executor, devisees and legatees of Thomas F. McGlone, Sr., who had died, were substituted for him as parties defendant.

The bill is long and verbose. It refers to the various suits heretofore mentioned and avers complainant's conclusions of law. The only additional pertinent averment of fact not made in the first suit instituted in Prince William county is that, since the final decree entered by it, the circuit court of the 11th judicial circuit in and for Dade county, Florida, had declared the divorce decree of July 17, 1946, null and void. The entire record of the Florida suit in which the divorce decree was set aside was filed as an exhibit. The pertinent relief prayed for in the second bill, while couched in different language, was the same as that prayed for in

the first bill; namely, that the court declare complainant the surviving husband of Rose Meredith Kessler with the right to share in the distribution of her estate. The additional pertinent prayer in the bill filed in the second suit is "that the court set aside the final order entered on January 20, 1948, sustaining the special plea and holding in effect that complainant, Oliver V. Kessler, had no rights herein."

Defendants demurred to the bill on various grounds, among others, that the final decree in the first suit instituted by complainant in the circuit court of Prince William county was a bar to his right to maintain the second suit. It is unusual for a defendant to assert the defense of *res judicata* or estoppel by judgment by demurrer. Whether the former adjudication is affirmatively or defensively asserted, the record of the prior action must be made a part of the record in the second action. However, in this case the attorneys for the respective parties, both in their briefs and oral argument, made frequent references to the record in the former suits, and at the bar of the Court agreed that in deciding the questions presented the Court should consider the various records of the former proceedings. From these records we have ascertained the pertinent facts heretofore stated.

Complainant contends that under the full faith and credit provision of the Constitution of the United States, Article IV, section 1, the Virginia court must give full force and effect to the subsequent decree of the Florida court declaring the divorce invalid, and reverse its former adjudication that the Florida divorce was valid.

It is stated in the complainant's brief that he knew in the latter part of 1946 before his wife's death that she had obtained a divorce against him in Florida. Inasmuch as he had not appeared in the divorce proceedings and had not been served personally with process, he had the election of contesting the validity of the divorce on jurisdictional grounds either in the State of his domicile, Virginia, or in the Florida court where the divorce was granted. Having elected to in-

voke the jurisdiction of the Virginia court he is estopped from again litigating the same question in any other proceeding in a Virginia court. *Patterson* v. *Saunders*, 194 Va. 607, 74 S. E. (2d) 204.

It is said in *Williams* v. *North Carolina*, 325 U. S. 226, 231, 65 S. Ct. 1092, 89 L. ed. 1577: " . . . If a finding by the court of one State that domicil in another State has been abandoned were conclusive upon the old domiciliary State, the policy of each State in matters of most intimate concern could be subverted by the policy of every other State. This Court has long ago denied the existence of such destructive power. The issue has a far reach. For domicil is the foundation of probate jurisdiction precisely as it is that of divorce. The ruling in *Tilt* v. *Kelsey*, 207 U. S. 43, regarding the probate of a will, is equally applicable to a sister-State divorce decree: 'the full faith and credit due to the proceedings of the New Jersey court do not require that the courts of New York shall be bound by its adjudication on the question of domicil. On the contrary, it is open to the courts of any State in the trial of a collateral issue to determine upon the evidence produced the true domicil of the deceased'. 207 U. S. 43, 53.

" . . . In short, the decree of divorce is a conclusive adjudication of everything except the jurisdictional facts upon which it is founded, and domicil is a jurisdictional fact. To permit the necessary finding of domicil by one State to foreclose all States in the protection of their social institutions would be intolerable."

Complainant, with full knowledge that his wife prior to her death had obtained a divorce against him in Florida, instituted the first suit in Prince William county, alleging that he was entitled to the rights of a surviving consort. He made no reference in his bill to the divorce, the validity of which at that time had not been challenged. He should have anticipated and probably did anticipate that the Florida divorce would be pleaded in defense of the rights asserted. Such a plea was filed on September 10, 1947. Complainant's

replication denying its validity was filed on October 6, 1947, and, after giving complainant time and opportunity to get all pertinent evidence on the issue, the case was heard and decided three months later, on January 20, 1948.

Chief Justice Vinson in *Sherrer* v. *Sherrer*, 334 U. S. 343, 68 S. Ct. 1087, 1090, 92 L. ed. 1429, stated that in the federal court " . . . the rule has evolved that the doctrine of res judicata applies to adjudications relating either to jurisdiction of the person or of the subject matter where such adjudications have been made in proceedings in which those questions were in issue and in which the parties were given full opportunity to litigate."

The limitation and the extent of the full faith and credit clause of the Constitution of the United States were discussed in *Johnson* v. *Muelberger*, 340 U. S. 581, 71 S. Ct. 474, 95 L. ed. 552. Mr. Justice Reed, in delivering the majority opinion, at p. 585 (340 U. S.) said: "This constitutional purpose promotes unification, not centralization. It leaves each state with power over its own courts but binds litigants, wherever they may be in the Nation, by prior orders of other courts with jurisdiction. 'One trial of an issue is enough. The principles of *res judicata* apply to questions of jurisdiction as well as to other issues, as well to jurisdiction of the subject matter as of the parties.' The federal purpose of the clause makes this Court, for both state and federal courts, the 'final arbiter when the question is raised as to what is a permissible limitation on the full faith and credit clause.' "

In *Baldwin* v. *Traveling Men's Assn.*, 283 U. S. 522, 525, 51 S. Ct. 517, 518, 75 L. ed. 1244, 1247, it was held: "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter

concluded by the judgment of the tribunal to which he has submitted his cause."

The same question now under consideration was raised in *Hammell v. Britton*, 119 Pac. (2d) 333, 19 Cal. (2d) 72. There, in the first proceeding in California, the validity of a Colorado judgment was raised and the judgment held valid. Subsequently, the Colorado court declared its first judgment null and void. In a second proceeding in California it was contended that the second judgment in Colorado made the first judgment in California invalid. Speaking to the issue it was said: "The full faith and credit clause does not compel this court to set aside a judgment rendered in an action involving the same issue which has subsequently been adjudicated by a court of a sister state. To so apply that clause would result in giving greater faith and credit to the judgments of the courts of other states than to those of the courts of this state. That provision of the Constitution cannot reasonably be interpreted to authorize a person to litigate a question ad infinitum. If full faith and credit is to be given, it should have been given to the California judgment by the Colorado court when entertaining the plaintiff's action which resulted in the second Colorado judgment." *U. S. v. Munsingwear, Inc.*, 340 U. S. 36; 71 S. Ct. 104, 95 L. ed. 36; 3 Freeman on Judgments, 5th ed., sec.1214.

The question of the power of an Idaho court to determine the jurisdiction of a Washington court was raised in *Treinies v. Sunshine Min. Co.*, 308 U. S. 66, 60 S. Ct. 44, 84 L. ed. 85. In determining this question, at page 78 (308 U. S.) it was said: "The Court of Appeals correctly determined that the issue of jurisdiction *vel non* of the Washington court could not be relitigated in this interpleader. As the Idaho District Court was a court of general jurisdiction, its conclusions are unassailable collaterally except for fraud or lack of jurisdiction. The holding by the Idaho court of no jurisdiction in Washington necessarily determined the question raised here as to the Idaho jurisdiction against Miss Treinies' contention. She is bound by that judgment.

"The power of the Idaho court to examine into the jurisdiction of the Washington court is beyond question. Even where the decision against the validity of the original judgment is erroneous, it is a valid exercise of judicial power by the second court.

"One trial of an issue is enough. 'The principles of *res judicata* apply to questions of jurisdiction as well as to other issues,' as well to jurisdiction of the subject matter as of the parties."

It was held in *Suter* v. *Suter*, 128 W. Va. 511, 37 S. E. (2d) 474, that under the full faith and credit clause of the federal constitution a state court is not required to give to the decree of a court of a sister-state a higher degree of force and effect than that accorded to the decrees of its own courts.

It was held in *McClung* v. *Folks*, 126 Va. 259, 266, 101 S. E. 345, that: " . . . The interests of society require that there be an end of litigation. No maxim of the law is more firmly established. For this reason the rule has always been strictly adhered to that, however material may be the newly discovered evidence, a new trial will not be granted on that account unless such evidence could not have been discovered by the exercise of reasonable diligence in time for use at the former trial. . . . ." *Patterson* v. *Anderson*, 194 Va. 557, 74 S. E. (2d) 195. There is no suggestion that the decree in the first suit in Virginia was tainted with either intrinsic or extrinsic fraud.

The circuit court of Prince William county did not rely upon the statement on the face of the divorce decree that the Florida court had jurisdiction of the plaintiff, but made a separate and independent inquiry on that issue and the issue of constructive service. It considered the evidence with the pertinent Florida statutes on divorce proceedings before it.

Under these circumstances, to give full force and effect to the second Florida decree in the divorce proceedings would be giving greater force and effect to the judgment of a

sister-state than we give to the judgments of our own courts, and would permit a litigant to litigate the same question indefinitely. We, therefore, affirm the decree of the trial court.

*Affirmed.*

SPRATLEY, J., dissenting.

I am constrained to dissent from the opinion of the majority because I am unable to agree that the principles of *res judicata* should be applied under the circumstances of this case to defeat the marital rights of the appellant.

In 50 C. J. S., Judgments, Section 712b, page 180, this is said:

"The estoppel of a judgment extends only to the facts in issue as they existed at the time the judgment was rendered, and does not prevent a reexamination of the same questions between the same parties where in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of the litigants."

See also 50 C. J. S. Judgments, Section 650, page 92, *et seq.*