203 So.2d 450

**Anna L. PRUITT et al.**

**v.**

**Andrew W. KEY et al.**

**6 Div. 408.**

Supreme Court of Alabama.

Oct. 26, 1967.

Walter Joe James, Jr., Haleyville, for appellants.

Tweedy & Beech, Jasper, for appellees.

HARWOOD, Justice.

This is an appeal from a judgment and decree denying a petition filed by Anna L. Pruitt and Leroy C. Pruitt, seeking to have the custody of four children awarded to them.

The children are Wilford Andrew Dewayne Key, age 12 years, Anna Marie Key, age 6 years, Loyed Lee Key, age 4 years, and Patricia Jane Key, age 2 years. They are the children of Loyed Chandler Key, and Ethel L. Key, deceased.

The record shows that Loyed C. Key and his wife Ethel moved from Alabama to the state of Indiana sometime in 1960, and lived there continuously until Ethel was killed by Loyed on 21 March 1965.

Ethel's body was returned to Winston County, Alabama, for burial and Loyed Key and the children returned to Alabama for the funeral.

After the funeral Loyed Key and his children, accompanied by his father and moth-er, Andrew W. Key and Beadie Adella Key, were returning to Loyed's home in Indiana, when in Kentucky, Loyed was arrested under an Indiana warrant charging him with the murder of his wife Ethel.

Andrew W. Key and Beadie A. Key continued on to Indiana with the four children. Loyed, after his arrest, had requested his father (the grandfather of the children) to take the children back to Alabama and rear them. This the grandparents agreed to do, and the purpose of continuing the trip on to Indiana was to gather up the clothing of the children.

The appellant, Anna L. Pruitt, was the sister of Mrs. Loyed Key, and therefore the aunt of the children. She and Mr. Pruitt assisted the Key grandparents in gathering together the children's belongings in Indiana. At this time Mrs. Pruitt offered to keep the children but Mr. Key replied that he had promised his son to take the children and rear them and he wanted to fulfill this obligation.

The Key grandparents and the children returned to the Key home in Alabama on 27 March 1965.

On 29 March 1965, the Keys filed a petition in the Circuit Court of Walker County Alabama, in Equity, seeking the custody of the children, and on that same day that court issued an order granting temporary custody, care, and control of the children to Mr. and Mrs. Andrew W. Key.

On 15 April 1965, Loyed Key pleaded guilty to the murder of his wife Ethel, and was sentenced to life imprisonment in the Indiana State Prison.

On 4 May 1965, Mr. and Mrs. Pruitt filed a petition in the Circuit Court of Grant County Indiana seeking to have the custody, care, and control of the children awarded to them.

On 12 May 1965, after a hearing, the Circuit Court of Walker County Alabama,

entered a final order granting the control of the children to Mr. and Mrs. Key.

On 20 May 1965, the Circuit Court of Grant County Indiana, entered an order awarding the temporary control of the children to Mr. and Mrs. Pruitt.

It also appears that Mr. and Mrs. Pruitt sought to intervene in the proceedings in the Circuit Court of Walker County Alabama, on 29 June 1965, but this effort was belated and unsuccessful.

Thereafter, on 22 December 1965, Mr. and Mrs. Pruitt filed a petition in the Circuit Court of Walker County Alabama seeking custody of the children.

After a full hearing, the Circuit Court of Walker County Alabama entered a decree making extensive findings of fact and adjudging that the decree rendered on 12 May 1965 by the Circuit Court of Walker County Alabama, was a legal, valid, and binding decree as to the matter set out therein, and that the order rendered by the Circuit Court of Grant County Indiana on 20 May 1965, was not binding on the Circuit Court of Walker County Alabama, and therefore continued the custody of the children in the Key grandparents, and restrained all parties from removing the children from the State of Alabama without written permission of the court. The maternal relatives of said children were given reasonable visitation rights upon approval of such visits by the grandfather, Andrew W. Key.

It is from this decree that this appeal was perfected.

In the hearing below it was shown that Anna Pruitt and Leroy Pruitt are approximately 43 years of age; that they have been married some 26 years and are childless.

Andrew Key is approximately 59 years of age and his wife is approximately 57 years of age. They have nine children all of whom are over the age of 21 years and all of whom are married. There are some 13 children of these marriages, that is, grandchildren of the Keys.

Both the Pruitts, who live in Muncie, Indiana, and the Keys who reside in Walker County, Alabama, are substantial citizens and enjoy good reputations in their respective communities. While not wealthy, Mr. Key and Mr. Pruitt earn substantial incomes sufficient for the support of their families and each is able to pay for the support of the four children. While counsel for the appellant makes much of the difference in the ages of the Keys and the Pruitts, the testimony shows that Mr. and Mrs. Key are in excellent health and are fully able to carry out the additional burdens of caring for the four children.

It is also significant that in the hearing below Andrew Dewayne Key, the eldest of the children and who was 13 years of age at the time of the proceedings below, testified that it was his desire that he be permitted to live with his Key grandparents.

The evidence further shows that the two children of school age were promptly enrolled in the schools of Walker County, Alabama, where according to their teachers they are doing good scholastic work and are well adjusted and appear to be happy.

Numerous witnesses familiar with the Key domestic setup, testified that all of the children appear to be well adjusted in their life with the Keys, are happy, well clothed, and healthy. The evidence further shows that Mr. and Mrs. Key have in addition to the custodial proceedings, processed adoption proceedings, and as adopted children of the Keys the children are entitled to receive medical and hospital insurance benefits from the United Mine Workers of America.

Counsel for appellant first argues that the lower court failed to give full faith and credit to the decree of the Circuit Court of Grant County, Indiana. This argument overlooks the fact that the temporary order

granting the custody of the children to the Keys was entered on 4 May 1965, and that this order was made final by the Circuit Court of Walker County, Alabama, on 12 May 1965. While it is true that the appellants filed a petition for custody of the children in the Circuit Court of Grant County, Indiana, on 4 May 1965, no order was entered by the Indiana court until 20 May 1965, when that court granted temporary custody of the children to the Pruitts.

■ The evidence is also undisputed that at the time of the orders entered by the Circuit Court of Walker County, the children were in the jurisdiction of that court and have continuously been within the jurisdiction of that court since they were brought to Alabama, while on the other hand, the children were not in Indiana at any time that the Indiana court entered its orders. The residence of a child alone is usually enough to induce a court to accept jurisdiction in a custody case. Leflar, Conflict of laws, Section 180.

■ The full faith and credit clause of the United States Constitution does not compel a court to set aside a judgment rendered in an action involving the same issue which is subsequently adjudicated with a different result by a court of a sister state. To so conclude would result in giving greater faith and credit to the judgment of the other state than to the judgment duly entered in the court of the state rendering the first judgment. Hammell v. Britton, 19 Cal.2d 72, 119 P.2d 333.

■ Counsel for appellant further argues that the children were wrongfully brought into Alabama by Mr. and Mrs. Key, and that therefore, as a matter of comity, the courts of Alabama should honor and enforce the Indiana decree. See State v. Black, 239 Ala. 644, 196 So. 713; Kugle et al. v. Harpe, 234 Ala. 494, 176 So. 617. This doctrine is, however, based on the premise of a forceable and surreptitious withdrawal of a child from a state whose courts had already assumed jurisdiction to determine the custody of the child. We do not find such condition in this case. It would seem only normal that the grandparents of the four children having them in custody at the time of the arrest of their father, and being importuned by the father to keep the children with them and take them back to Alabama and assume the responsibility of rearing them, would naturally return to their home with the children. No court had assumed jurisdiction to determine the custody of the children at this time, and we can read nothing wrongful in the action of the grandparents in the premises.

Counsel for appellant further argues that the court erred in its decree in awarding the custody of the children to the Keys and in not awarding the children to the Pruitts.

Counsel states that the evidence is without material conflict, and therefore no presumption is indulged in favor of the findings of the lower court. This is correct, and therefore the sole question is whether the court has misapplied the law to the undisputed facts.

■ The paramount governing legal principle applicable to child custody cases is the welfare of the child, both presently and in the future. This principle is so firmly established as to require no citation of authorities.

■ Counsel has cited and heavily relies upon Wright v. Price, 226 Ala. 591, 147 So. 886, wherein this court reversed and rendered a decree of the lower court awarding the custody to a maternal uncle as against the paternal grandmother. The uncle was in far better financial condition than was the grandmother. The evidence further showed that the grandmother, while she had custody of the child had taken it on

438

monthly visits to Kilby Prison to visit the child's father who was under sentence for having killed the child's mother. The court considered this an unwholesome situation.

In the present case the father is imprisoned in Indiana, far removed from Alabama and the circumstances of the killing of the children's mother has never been discussed. They have never been taken to visit the father in Indiana, and so far as deducible from the evidence, such a visit is improbable.

The financial condition of the parties is not so disparate as to be a serious factor.

No two child custody cases are alike. The factors to be considered are as variable as the actions of the varied individuals seeking judicial determination of this most difficult and delicate question. Certainly in this type of case, the trial court who hears and sees the witnesses testify is particularly advantaged as compared with a reviewing court which must draw its conclusion from cold print.

But the cases state that if the evidence is undisputed no presumption is to be indulged in favor of the findings of the trial court. However, we are now concerned only with whether the Chancellor misapplied the law to the undisputed facts, not with the findings made on undisputed facts. No presumption attends the Chancellor's application of the law to the facts. Actually, were we in doubt, we do not see how it could be rationally asserted that the legal principle governing, i. e., the welfare of the child, was misapplied in this case. The standards and guidelines are only generalities.

After a study of this entire record, we are in accord with the Chancellor's decree, without resort to any presumptions.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.