BRONYA KRAM, PLAINTIFF-APPELLANT, v.
PHILIP KRAM, DEFENDANT-RESPONDENT.

Argued October 7, 1968—Decided November 4, 1968.

546

*Mr. Morris M. Schnitzer* argued the cause for appellant (*Mr. Waldron Kraemer,* on the brief; *Mr. Hyman Halpern,* attorney).

*Mr. Barry R. Mandelbaum* argued the cause for respondent (*Mr. Irving Mandelbaum,* of counsel).

The opinion of the court was delivered

PER CURIAM. We granted certification, 51 *N. J.* 273 (1968), to review the judgment of the Appellate Division entered on its opinion reported in 98 *N. J. Super.* 274 (*App. Div.* 1967). We affirm substantially on that opinion, but add a few words in the light of the dissenting opinion in our Court.

■ That Florida had jurisdiction of the marital *res* is not disputed; when the husband sued for and obtained the divorce, he was (and in fact still is) a *bona fide* domiciliary of that State. Hence, under controlling decisions of the United States Supreme Court, the Florida judgment is entitled to full faith and credit *as to marital status* unless something removes this case from the usual rule. The wife says her situation constitutes a reasonable exception. We think it does not, and find no precedent to support her.

■■ The earlier judgment obtained by the wife in her separate maintenance proceeding in New Jersey of course did not purport to bar a later dissolution of the marriage. It merely adjudged that she receive support, and the later Florida decree of divorce obtained by the husband did not disturb that judgment. The wife's right to support under the New Jersey judgment remains undiminished. Indeed, it is not suggested the separate maintenance judgment should bar full faith and credit to the Florida judgment of divorce. Rather that result is said to follow from the circumstance that the husband had sought unsuccessfully to obtain a divorce in New Jersey by a counterclaim in the separate maintenance suit upon what seems to be the same "ground" on which he later succeeded in Florida.

■■ There is no conflict at all between the operative portions of the judgments with respect to the marital status of the parties. Florida did not challenge any adjudication, express or implied, that the parties were husband and wife as of the time of the New Jersey judgment. Florida granted a divorce as of a later date, and did so upon a cause it found sufficient under Florida law. Nonetheless the wife says that if the husband's second suit had been brought in New Jersey, her plea of *res judicata* would have prevailed, and for that reason Florida's judgment should be refused full faith and credit. But the existence under our law of a defense against the Florida cause of action — even one which would have prevailed if proffered to the Florida court, see Annotation, 4 *A. L. R. 2d* 107 (1949) — does not justify a refusal of full

faith and credit to its judgment insofar as it decrees the dissolution of the marital status. We should not review the merits of the Florida judgment under its laws or under ours.

The wife's plight was really not worsened because the husband had defended her New Jersey action or because he had tried unsuccessfully to obtain a divorce here. The wife's grievance is no different from that of every other wife whose husband moves his domicile to another State and there severs the marital knot. Every such wife, who may indeed be "impoverished" as the dissent hypothesizes, is faced with the heavy burden of meeting the husband in a distant State which, indeed, may recognize grounds for divorce as to which she has no defense at all. We are not happy about this scene, but we have no solution better than the "divisible" divorce concept evolved by the United States Supreme Court. In any event, that concept is binding upon us, and we see no point in seeking minute exceptions which do not offer an answer to the underlying problem.

The "divisible" divorce concept was devised to end the interstate turmoil over marital status but without depriving the wife of her right to support if the judgment of divorce was entered without personal jurisdiction of her. The exception we are asked to make would merely revive some of the uncertainty. The present parties would be man and wife in New Jersey where the wife lives but divorced in Florida where the husband resides, while other States, if the occasion should arise, would have to choose between two incompatible judgments with respect to marital status.

Florida's jurisdiction to act with respect to the marital status being undisputed, the sounder course is to recognize Florida's judgment of divorce. We repeat that to do so does not depreciate in the least the terms of the earlier New Jersey judgment. The Florida judgment does not question the New Jersey support order, and insofar as the New Jersey judgment may be said to be a continuing adjudication that as of its date the husband was not entitled to a divorce under the New Jersey law, again the Florida judgment does not

collide with that adjudication, for Florida granted a divorce as of a later date and did so under Florida law and not under New Jersey law. That Florida might have denied the divorce if the action had been defended or that the action would have failed if brought in our courts, is not relevant. The full faith and credit clause does not permit such a review of the merits of a foreign divorce judgment.

FRANCIS, J. (dissenting). The parties to this action were married in 1939. In 1949 they settled in New Jersey. Three children born of the marriage lived with them in this State. They cohabited here as husband and wife until January 1961 when the husband left his wife. Thereafter, alleging abandonment, she instituted suit for separate maintenance for herself and their three minor children. Kram was still living in New Jersey and was served personally in the proceeding. He appeared and filed an answer denying the abandonment. He also filed a counterclaim seeking an absolute divorce on the ground of extreme cruelty, the details of which he particularized as required by our practice. The case was fully tried and on April 5, 1963 resulted in; (1) a judgment that Kram had abandoned his wife without justifiable cause, (2) a judgment that on the evidence submitted, the wife had not been guilty of extreme cruelty, and therefore the husband had shown no such cause of action for divorce. Support was ordered for the wife and children and she was awarded custody of the children.

Thereafter and until the present time Mrs. Kram has continued to reside in New Jersey. On the other hand, Kram went to Florida where, in June 1964, he brought suit for divorce against his wife on the ground on which judgment had gone against him in this State, i. e., extreme cruelty. His complaint made substantially the same allegations of cruelty as were counted on in New Jersey. It also contained some disparaging allegations about Mrs. Kram's conduct in the New Jersey action, which conduct he claimed made him "unable to succeed" with his divorce action for extreme cruelty here. Mrs. Kram was not served personally in the

action. She was notified by mail of its pendency, but entered no appearance and filed no answer. Instead she obtained from the appropriate New Jersey court an *ad interim* restraint prohibiting Kram from proceeding in Florida. After reveiving notice of the restraint, which he ignored, he obtained an *ex parte* decree of divorce in Florida on the only ground alleged, extreme cruelty. The decree made no provision for future maintenance for Mrs. Kram, but did order monthly payments for support of the children.

In January 1965 Mrs. Kram sought a judgment in the Superior Court of New Jersey declaring the *ex parte* Florida divorce of no force and effect in this State, and that she continues to be Kram's lawful wife. The trial court granted such a judgment, 94 *N. J. Super.* 539 (*Ch. Div.* 1967), but the Appellate Division reversed. It held that the foreign decree was entitled to full faith and credit and must be accepted as binding in New Jersey. The opinion declared, however, that Mrs. Kram's right to support was not cut off by the decree. 98 *N. J. Super.* 274 (*App. Div.* 1967). This Court granted her petition for certification. 51 *N. J.* 273 (1968).

I cannot agree that the courts of New Jersey are obliged by the Full Faith and Credit clause of the United States Constitution, *Art.* IV, § 1, to accept what amounts to an overruling of our judgment by the Florida court. A divorce court is basically a court of equity. Although the allegations of Kram's complaint in the Florida Circuit Court regarding the New Jersey iltigation between the parties were disingenuously ambiguous, they were sufficient to give notice to a court in which matrimonial causes are heard that the same cause had been tried in a New Jersey court and that judgment had gone against Kram. See *R. R.* 4:95–1(c) embodying the New Jersey practice (any complaint or counterclaim for divorce, nullity, or separate maintenance shall state any previous proceedings involving the marital relation). One fact was clear from the complaint: The New Jersey case had been decided against Kram and a judgment had been en-

tered requiring him to support his wife. Yet, on the basis of the record before *us*, the Florida court made no effort to determine whether our judgment should be given full faith and credit. In my judgment, even apart from the strictures of full faith and credit, since the State is regarded as a third party in every divorce proceeding, traditional notions of interstate comity should have stimulated a court of equity to inquire into the nature of the New Jersey judgment, and then to have given it the respect which was its due. In the context of a matrimonial cause like this one, it is no answer to say that *res judicata* is a defense which must be pleaded, and if not pleaded is lost. A contrary view means that an impoverished wife who has been successful in a bilateral proceeding involving the same cause of action in one state, which had personal jurisdiction over both parties, must suffer loss of her status as a wife even in her home state, unless she travels a great distance to the foreign jurisdiction to plead her earlier favorable judgment. In such a situation, especially when the foreign court has been made reasonably aware of an earlier judgment favorable to the defendant in a bilateral proceeding in her home state, full faith and credit priority ought not to be given or required by her home state to the later *ex parte* foreign judgment based on service by publication. In cases of that type, public policy should not permit the later judgment of the foreign state to be lifted by its bootstraps into the circle of full faith and credit. In view of the legitimate interest of our State in the judgment of its court and in the status it preserved for the wife, there should be no constitutional prohibition against preferring our judgment to that of Florida. There is much sense in the observation of Professor Powell that "from the standpoint of partitioning power among the several states, there may be wisdom in having a gap between what due process will not forbid and what full faith and credit will require." *Powell, And Repent at Leisure*, 58 *Harv. L. Rev.* 930, 936 (1945).

In this case the husband's position is that New Jersey must give greater credit to the Florida judgment than to our

own, which was lawfully entered on the same issue. The Full Faith and Credit clause does not require that we do so; nor does it compel us to overrule our decision and to accept that of the foreign jurisdiction. See *Porter v. Porter,* 101 *Ariz.* 131, 416 *P. 2d* 564 (*Sup. Ct.* 1966) *certiorari* denied 386 *U. S.* 957, 87 *S. Ct.* 1028, 18 *L. Ed. 2d* 107, rehearing denied 386 *U. S.* 1027, 87 *S. Ct.* 1371, 18 *L. Ed. 2d* 472 (1967); *Colby v. Colby,* 78 *Nev.* 150, 369 *P. 2d* 1019 (*Sup. Ct.* 1962); *Hammell v. Britton,* 19 *Cal. 2d* 72, 119 *P. 2d* 333, 339 (*Sup. Ct.* 1941); *cf. Kessler v. Fauquier Nat. Bank,* 195 *Va.* 1095, 81 *S. E. 2d* 440 (*Sup. Ct.* 1954). Under the circumstances, in my judgment the trial court was correct in holding that the Florida judgment is not entitled to full faith and credit in this State, and that in this jurisdiction Mrs. Kram is still the lawful wife of Philip Kram. Accordingly, I would reverse the portion of the judgment of the Appellate Division which holds to the contrary.

PROCTOR, J., concurs in this opinion.

*For affirmance* — Chief Justice WEINTRAUB and Justices HALL, SCHETTINO and HANEMAN — 4.

*For reversal* — Justices FRANCIS and PROCTOR — 2.