## Richmond

JAMES HARDY PACE

v.

CAROLINE S. PACE

September 11, 1981.

Record No. 791391.

Present: Harrison, Poff, Compton, Thompson, JJ., and Harman, S.J.

*Joseph E. Blackburn, Jr. (White & Wood, P.C.,* on brief), for appellant.

*Edward W. Taylor* for appellee.

THOMPSON, J., delivered the opinion of the Court.

In this appeal, we consider whether a circuit court erred in granting full faith and credit to a sister state's decree concerning child support arrearages.

On July 8, 1974, Caroline S. Pace obtained a divorce from James Hardy Pace in a Missouri court and received custody of their two children, Bonnie and Bradley, and child support of $175.00 per month for each child. The father was awarded "reasonable visitation rights" and "reasonable temporary custody." Both parties entered general appearances in the Missouri court. At the time of the decree, the litigants and their children were

residents of Missouri. After the divorce, Mr. Pace moved to Virginia, and Mrs. Pace and the two children moved to Alabama.

Bonnie has lived with her father since November, 1976. On December 19, 1976, following a hearing at which Mrs. Pace appeared, a Virginia juvenile and domestic relations court awarded custody of Bonnie to Mr. Pace. On January 6, 1977, the Missouri court terminated Mr. Pace's rights of temporary custody of Bradley during a portion of the year because, according to the court, Bonnie had been removed to Virginia without the consent of Mrs. Pace or the Missouri court.

In August of 1977, Mrs. Pace petitioned an Alabama court for enforcement of the Missouri child support order under the provisions of the Revised Uniform Reciprocal Enforcement of Support Act (RURESA). On August 30, 1977, the Alabama court entered an order finding that Mr. Pace was in arrears by the amount of $2,232.00 and permanently enjoining Mr. Pace from taking Bradley from Mrs. Pace.

On August 31, 1977, the Juvenile and Domestic Relations Court of Chesterfield County, acting upon Mrs. Pace's petition for child support for Bradley under RURESA, dismissed her petition after concluding Mr. Pace "owes no obligation of support to her for Bradley." The Virginia court cited three reasons for its decision: Mrs. Pace's financial resources, her refusal to allow Bradley to talk or visit with his father, and Mr. Pace's support of Bonnie. The Virginia order did not mention the prior Missouri decree providing child support. Mrs. Pace did not appeal the Virginia court's ruling.

On May 4, 1978, Mrs. Pace petitioned the Missouri court for an order declaring Mr. Pace in arrears of support payments decreed by the 1974 Missouri order. The Missouri court entered an order finding Mr. Pace in arrears in the amount of $3,982.00. In June 1978, Mrs. Pace, seeking to enforce the Missouri order entered a month earlier, filed a motion for judgment in the Circuit Court of Chesterfield County. After hearing the evidence and the legal arguments of counsel, the circuit court concluded that the Missouri order was entitled to full faith and credit. Mr. Pace has brought this appeal in which he challenges the circuit court's ruling giving full faith and credit to the 1978 Missouri order.

■ Mr. Pace contends that we should not give full faith and credit to the 1978 Missouri judgment for child support arrearages because in *Osborne* v. *Osborne*, 215 Va. 205, 213, 207 S.E.2d 875,

882 (1975), we "decline[d] to give full faith and credit to a child support order entered in another state in uncontested proceedings." In *Osborne*, the trial court ruled it could set the husband's child support obligation at a monthly amount higher than that provided in an earlier Texas decree. Upholding the trial court's conclusion, we held that the Virginia court, which had jurisdiction of both litigants and their children, could make an independent determination of the proper amount of support payments to be paid in the future. *Id.* Read in its proper context, the statement cited by Mr. Pace does not stand for the proposition, as he contends, that full faith and credit need not be given to a sister state's decree for child support arrearages. Indeed, Mr. Pace's interpretation is substantially in conflict with *Barber* v. *Barber*, 323 U.S. 77 (1944), in which the Court noted that a judgment for accrued support payments was entitled to full faith and credit if the obligee had a vested right to the payments after they became due.

 The entry of two Virginia decrees prior to the entry of the 1978 Missouri order, however, alters the degree to which the 1978 Missouri judgment is entitled to full faith and credit. In December 1976, following a hearing at which both parties entered appearances, a Virginia court awarded custody of Bonnie to Mr. Pace. That order, from which the wife did not appeal, terminated Mr. Pace's obligation to pay Mrs. Pace for the future support of Bonnie. In August 1977, the Juvenile and Domestic Relations Court of Chesterfield County, acting upon Mrs. Pace's petition for child support for Bradley, determined Mr. Pace "owes no obligation of support" to Mrs. Pace for Bradley. Mrs. Pace's petition seeking child support for Bradley constituted a submission to the jurisdiction of the Virginia court because it acknowledged the power of the court to resolve the issue brought before it. That Mrs. Pace did not personally appear and was not represented by counsel does not mitigate the fact that the Virginia court acquired jurisdiction over her when she filed her petiton.

Mrs. Pace cites alleged irregularities in the Virginia RURESA proceeding in support of her contention that its result does not bar giving full faith and credit to the 1978 Missouri judgment.[1] The proper forum for challenging errors in the Virginia RURESA pro-

---

[1] Specifically, she notes that nothing in the record indicates the Commonwealth's Attorney represented her in the RURESA action, as required by Code § 20-88.23(b). She also contends that a responding court in Virginia is required to conform its order to the amount allowed by a foreign court in a previous proceeding. Code § 20-88.28:1.

ceeding would have been an appeal from the trial court's order, a step which Mrs. Pace failed to pursue. In this appeal, she is precluded from collaterally attacking the 1977 Virginia order upon nonjurisdictional grounds. The alleged errors she raises, while serious, do not render the 1977 Virginia order void for lack of jurisdiction.

Mrs. Pace's reliance upon Code § 20-88.28:2 is also misplaced. That Code section provides that "[a] support order made by a court of this State pursuant to this law [RURESA] does not nullify . . . a support order made by a court of any other state . . . unless otherwise specifically provided by the court." Mrs. Pace argues that, according to the terms of this statute, the 1977 Virginia order did not nullify the 1974 Missouri order. The 1977 Virginia decree, however, is not a "support order," as that term is defined in Code § 20-88.13(14): "any judgment, decree, or order of support in favor of an obligee." Code § 20-88.28:2 applies to situations where two or more courts have entered support orders for different amounts. It has no relevance where the subsequent court order has relieved the obligor of all duties of support. *People ex rel. Oetjen v. Oetjen*, 92 Ill. App.3d 699, 706, 416 N.E.2d 278, 284 (1980).

This case is somewhat similar to *Kessler v. Fauquier National Bank*, 195 Va. 1095, 81 S.E.2d 440, *cert. denied*, 348 U.S. 834 (1954). In *Kessler*, a Florida court had awarded Mrs. Kessler an *ex parte* divorce from her husband. A year later, she died. Claiming the Florida divorce was invalid, Mr. Kessler brought suit in Virginia for a widower's share of her estate. The Virginia trial court upheld the validity of the Florida divorce and denied him any interest in her estate. The husband then went to Florida to litigate again his status as a widower, and the Florida court concluded the divorce was void. Armed with the Florida decree, Mr. Kessler returned to Virginia and again requested a widower's share of the Kessler estate. Affirming the trial court's conclusion that the second Florida decree was not entitled to full faith and credit, we held that to give effect to the second Florida order "would be giving greater force and effect to the judgment of a sister-state than we give to the judgments of our own courts." *Id.* at 1105-06, 81 S.E.2d at 445. The full faith and credit clause of the Constitution does not require that we do so. *Pruitt v. Key*, 281 Ala. 433, 437, 203 So.2d 450, 453 (1967); *Hammell v. Britton*, 19 Cal.2d 72, 84, 119 P.2d 333, 339 (1941); *Jensen v. Barnes*, 33

Colo.App. 333, 336-37, 519 P.2d 1223, 1224 (1974); *Colby* v. *Colby*, 78 Nev. 150, 157, 369 P.2d 1019, 1023, *cert. denied*, 371 U.S. 888 (1962).

To the extent that the 1978 Missouri judgment includes arrearages for Bonnie after the 1976 Virginia order and for Bradley after the 1977 Virginia decree, it is not entitled to full faith and credit. Giving effect to the Missouri decree to that extent "would be giving greater force and effect to the judgment of a sister-state than we give to the judgments of our own court."[2] *Kessler*, 195 Va. at 1105-06, 81 S.E.2d at 445. The 1978 Missouri judgment for arrearages accruing under the 1974 decree is enforceable in Virginia only to the extent that it is not inconsistent with the intervening Virginia orders.

The judgment of the circuit court is reversed and the case remanded for proceedings consistent with this opinion. On remand, the circuit court will determine the portion of arrearages accruing under the 1974 Missouri order for Bonnie prior to the 1976 Virginia order and for Bradley prior to the 1977 Virginia order. To that extent, the circuit court should give full faith and credit to the 1978 Missouri decree.

*Reversed and remanded.*

---

[2] Of course, our ruling does not preclude a sister-state's court having jurisdiction over the wife and minor still in her custody from making its own independent determination of the amount of future child support to which the wife is entitled. Moreover, the full faith and credit clause does not require that court to determine that circumstances have changed from the time of the 1977 Virginia order before entering an order for future support. *Osborne*, 215 Va. at 213, 207 S.E.2d at 882. Such a decree would be enforceable in Virginia if it rested upon an independent examination of the husband's support obligation at a time subsequent to the 1977 Virginia order. The 1978 Missouri judgment merely accumulated arrearages accruing under the 1974 order, which was modified by the intervening Virginia decrees, and hence did not constitute such a subsequent examination of the husband's support obligation.