**Denis McA CAMPION, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF COMMUNITY & REGIONAL AFFAIRS, HOUSING ASSISTANCE DIVISION, Appellee.**

**No. S–5547.**

Supreme Court of Alaska.

July 1, 1994.

Kevin M. Morford, Jensen, Harris & Roth,
Anchorage, for appellant.

Richard N. Ullstrom, Routh & Crabtree,
P.C., Anchorage, for appellee.

Before MOORE, C.J., RABINOWITZ,
MATTHEWS and COMPTON, JJ., and
BRYNER, J., Pro Tem.[*]

## OPINION

MOORE, Chief Justice.

### INTRODUCTION

The State of Alaska brought an action to recover upon a deficiency judgment against Denis McA Campion ("Campion") in the United States District Court for the Virgin Islands. The original judgment against Campion was rendered in Nome, Alaska. The Virgin Islands District Court granted Campion's motion to dismiss on the ground that the original Alaska judgment was void for improper service of process. The State then filed another action in Anchorage to recover the deficiency. The parties filed cross-motions for summary judgment. The superior court granted the State's motion. Campion appeals, arguing that the Virgin Islands decision precludes the State from relying on the original Alaska judgment as a basis for a deficiency action. We reverse the trial court and hold that the State is collaterally estopped from relying on the Nome superior court's judgment.

### FACTS AND PROCEEDINGS

On March 27, 1990, the State of Alaska filed a complaint against Campion in Anchorage superior court to foreclose on a deed of trust and to enforce a promissory note. Because the property at issue was located in Nome, the action was dismissed without prejudice for improper venue.

The State then refiled in Nome superior court seeking the same relief. At the time the suit was filed, Campion was residing in the U.S. Virgin Islands. The State sent copies of the summons and complaint to Campion at a Virgin Islands business address (Roe–Win Corporation)[1] pursuant to Alaska Rule of Civil Procedure 4(h).[2] The material was sent certified mail, return receipt requested, addressed for restricted delivery to Campion only. However, a receptionist accepted and signed for the delivery. Campion asserts that the receptionist did not deliver the summons and complaint to him.

Campion did, however, receive actual notice of the Nome suit.[3] He then contacted counsel, who advised him that he had not been properly served and that he therefore need not respond to the Nome suit. Based upon this advice, Campion did not answer the complaint and did not actively defend against the suit. On March 8, 1991, the Nome supe-

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. The record on appeal contains no evidence that Roe–Win Corporation was a proper business address for Campion, nor is there any evidence in the record establishing that Campion owned or was employed by Roe–Win.

2. Alaska Civil Rule 4(h) provides:
 *Service of Process by Mail.* In addition to other methods of service provided for by this rule, process may also be served within this state or the United States or any of its possessions by registered or certified mail, with return receipt requested.... In such case, copies of the summons and complaint or other process shall be mailed for restricted delivery only to the

party to whom the summons or other process is directed or to the person authorized under federal regulation to receive his restricted delivery mail. All receipts shall be so addressed that they are returned to the party serving the summons or process or his attorney. Service of process by mail under this paragraph is complete when the return receipt is signed. Alaska R.Civ.P. 4(h).

3. The State asserts that Campion received a copy of the summons and complaint. However, the record establishes only that Campion received actual notice of the claim; it does not establish receipt of the summons and complaint.

rior court entered a default judgment and order of sale against Campion. The State thereafter sold the property at a judicial sale, leaving a deficiency of approximately $70,000.

The State then filed an action in the United States District Court for the Virgin Islands to enforce the Alaska deficiency judgment. The State moved for summary judgment, while Campion filed a motion to dismiss on the grounds that the Alaska judgment was void for lack of personal jurisdiction, based on improper service of process. The court granted Campion's motion to dismiss. The court's order stated "that the defendant was not properly served in the manner required by the Alaska Statute...." The order further stated "that the Alaska court lacked personal jurisdiction over the defendant and that the default judgment is void." Though the order was appealable under 28 U.S.C. § 1291, the State chose not to appeal.

The State instead filed a "Complaint for Deficiency" in Anchorage superior court, based upon the Nome suit. Campion filed for summary judgment, arguing *inter alia* that the Virgin Islands decision collaterally estopped the State from relying on the Nome suit as a basis for a deficiency action. The State filed a cross motion for summary judgment. The superior court granted the State's motion without comment and entered judgment against Campion in the amount of $81,991.50, including interest, costs, and fees. This appeal followed.

*DISCUSSION*

 The doctrine of collateral estoppel, also referred to as issue preclusion, "bars relitigation, even in an action on a different claim, of all 'issues of fact or law that were actually litigated and necessarily decided' in [a] prior proceeding." *Americana Fabrics v. L & L Textiles,* 754 F.2d 1524, 1529 (9th Cir.1985) (citations omitted). The doctrine serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). The applicability of the doctrine is a question of law

subject to independent review by this court. *Borg–Warner v. Avco Corp.,* 850 P.2d 628, 634 n. 15 (Alaska 1993).

The doctrine of collateral estoppel generally involves the effect of a judgment in the courts of the state in which it was rendered. However, the doctrine applies with equal (if not greater) force when the second action is brought in the courts of a different state, or where, as in the present case, the first action is brought in a federal court and the second action in a state court. The Restatement (Second) of Judgments states that, in such cases, "the Full Faith and Credit Clause or the Supremacy Clause of the United States Constitution, or federal statutes or rules of decision, may require that preclusive effect be given to the first judgment." Restatement (Second) of Judgments § 28 cmt. e (1982). In *Americana Fabrics,* the court noted that "a combination of constitutional and statutory considerations requires state courts to give [preclusive] effect to the judgments of federal courts." *Americana Fabrics,* 754 F.2d at 1529 (citing *Stoll v. Gottlieb,* 305 U.S. 165, 170–71, 59 S.Ct. 134, 136–37, 83 L.Ed. 104 (1938)); *see also Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* 755 F.2d 38, 43 (3d Cir.) (noting the "clearly established rule that state courts must give full faith and credit to the proceedings of federal courts"), *cert. denied,* 474 U.S. 819, 106 S.Ct. 67, 88 L.Ed.2d 54 (1985).

In *Murray v. Feight,* 741 P.2d 1148, 1153 (Alaska 1987), we stated the elements for collateral estoppel:

1. The plea of collateral estoppel must be asserted against a party or one in privity with a party to the first action;

2. The issue to be precluded from relitigation by operation of the doctrine must be identical to that decided in the first action;

3. The issue in the first action must have been resolved by a final judgment on the merits.

*See also Pruitt v. State, Dept. of Public Safety,* 825 P.2d 887, 890 (Alaska 1992) (requiring identity of issue, final judgment, and mutuality of parties); *Bignell v. Wise Mech. Contractors,* 720 P.2d 490, 494 (Alaska 1986)

("issue must have been actually litigated and determined ... by a valid and final judgment, and the determination must have been essential to the judgment"). It is well-established that the doctrine applies to jurisdictional issues as well as substantive issues. *Americana Fabrics*, 754 F.2d at 1529 (citing *Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963)).

In the instant case, the requirements for application of collateral estoppel, as enumerated in *Murray*, are clearly satisfied. The present action involves the same parties as the Virgin Islands suit. Thus, the first requirement is met. Likewise, the issue to be precluded here is identical to the issue litigated in the prior decision—whether the Alaska judgment against Campion is void based on improper service of process. Finally, the resolution of this issue by the Virgin Islands court was by a final, appealable judgment, resulting in the dismissal of the action. *See Briggs v. State, Dep't of Public Safety*, 732 P.2d 1078, 1082 (Alaska 1987) (" '[F]inal judgment' includes 'any prior adjudication of an issue ... that is determined to be sufficiently firm to be accorded conclusive effect.' ").[4]

The State argues, however, that the superior court's decision should be upheld on the principle that when the courts of two states have reached conflicting decisions on the same issue and one of the conflicting decisions was rendered by a court of the state in which the current action is pending, that decision is controlling, notwithstanding the Full Faith and Credit Clause and the doctrine of collateral estoppel. In support of this argument, the State cites several cases expounding this general rule. *See, e.g., Jensen v. Barnes*, 33 Colo.App. 333, 519 P.2d 1223, 1224 (1974) ("when one of the conflicting decisions was entered by a court of the

state in which the current action is pending, that decision takes precedence over the court of a sister state"); *Stuart v. Lilves*, 210 Cal.App.3d 1215, 258 Cal.Rptr. 780, 782 (1989) (full faith and credit does not compel court to set aside judgment rendered in this state in action involving the same issue as that subsequently adjudicated by court of a sister state).

The cases cited by the State do not persuasively support its argument in the present case. The rule discussed above is expressly limited to those situations in which the subsequent out-of-state action involves the same issue which was decided in the initial in-state action. In the present case, the Nome superior court simply was not faced with and did not address the question of whether service of process on Campion was sufficient to confer jurisdiction. *See* Restatement (Second) of Judgments § 27 cmt. e (1982) ("[i]n the case of a judgment entered by ... default, none of the issues is actually litigated"). Thus, it cannot be said that the Alaska court and the Virgin Islands court reached conflicting decisions on the same issue.

The State also relies on *Pace v. Pace*, 222 Va. 524, 281 S.E.2d 891, 894 (1981), in which the court stated that full faith and credit does not require a court to give "greater force and effect to the judgment of a sister-state than we give to the judgments of our own courts." Again, however, the State's reliance is misplaced. In *Pace*, a Virginia court addressed a conflict between a 1977 Virginia decision (declaring that a husband had no child support obligation) and a 1978 Missouri decision (ordering the husband to pay child support and arrearages of nearly $4,000). The wife argued that the court should give Full Faith and Credit to the Missouri judgment, based on certain alleged

---

4. The State argues that the second requirement, identity of issue, is not met. First, the State notes that an action upon a judgment is distinct from the underlying judgment. This assertion is irrelevant. Both the Virgin Islands suit and the instant suit are actions upon the same judgment.

 The State also argues that the issue to be decided in the instant case is not identical to that decided in the prior adjudication, because the Virgin Islands court "simply decided that it would not enforce the Alaska judgment as a

Virgin Islands judgment." This ignores the plain language of the court's order, which expressly states "that the defendant was not properly served in the manner required by the Alaska Statute...." Therefore, the order concludes "that the Alaska court lacked personal jurisdiction over the defendant and that the default judgment is void." This determination was the basis for the Virgin Islands court's decision to dismiss and is identical to the issue raised in the instant case. *See Bignell*, 720 P.2d at 494.

irregularities in the earlier Virginia proceeding.

The court, however, disagreed. In concluding that the Court was not required to give full faith and credit to the Missouri decision, the court noted that the wife was "precluded from collaterally attacking the 1977 Virginia order upon *non-jurisdictional grounds*. The alleged errors . . ., while serious, do not render the 1977 Virginia order void for lack of jurisdiction." *Pace*, 281 S.E.2d at 893 (emphasis added). Thus, the court implied that a different result would have been reached had the wife challenged the first order on jurisdictional grounds. Of course, in the instant case, this is exactly the argument offered by Campion and the basis for the Virgin Islands decision.

Finally, the State also cites *Colby v. Colby*, 78 Nev. 150, 369 P.2d 1019, *cert. denied*, 371 U.S. 888, 83 S.Ct. 186, 9 L.Ed.2d 122 (1962). In *Colby*, the Nevada Supreme Court addressed two conflicting divorce decrees, one issued in Nevada, the other in Maryland. The wife was granted a Nevada divorce in 1955. The husband, though properly served in accordance with Nevada law, failed to appear and his default was entered. *Id.*, 78 Nev. 150, 369 P.2d at 1019. Two years later, the husband sought a Maryland divorce decree. The wife pleaded the Nevada default judgment as a defense. However, the Maryland court declared the prior decree to be "null, void and of no effect in law or in equity," apparently based on the court's conclusion that the wife was not a domiciliary of Nevada.[5] *Id.* at 1019–20. Thereafter, the husband brought suit in Nevada seeking to have the initial default decree vacated on the grounds that the Maryland judgment must be given full faith and credit. *Id.* at 1020.

The court, however, refused to vacate the Nevada divorce. The court stated that to hold otherwise would be "to give [the Maryland decree] greater credit and respect than the prior decree of our own State lawfully entered." *Id.* at 1023. The court noted that domicile, at least in the context of divorce proceedings, is a "matter[ ] of most intimate concern" to a state. *Id.* (quoting *Williams v. North Carolina*, 325 U.S. 226, 231, 65 S.Ct. 1092, 1096, 89 L.Ed. 1577 (1945)). Thus, the court concluded that "[t]he State of Nevada has unquestioned authority, consistent with procedural due process, to grant divorces on whatever basis it sees fit to all who meet its statutory requirements. It is entitled, moreover, to give its divorce decrees absolute and binding finality within the confines of its borders." *Id.*

*Colby* is unpersuasive authority with respect to the instant case. The State relies on *Colby* to support its argument that "neither collateral estoppel nor the full faith and credit clause . . . require that the forum state's courts must give effect to a sister state judgment holding that a prior judgment of the forum state is void, if the forum state's courts conclude that it was valid." To the extent *Colby* may be read to support such a position, we conclude that it is questionable law.[6] To disregard an out-of-state judgment based on the conclusion that the sister state court was incorrect would eviscerate all meaning from the full faith and credit clause and the doctrine of collateral estoppel, at least where the out-of-state judgment is not clearly in error. To hold otherwise would require a court to address the merits of the underlying dispute when deciding the threshold issue of whether collateral estoppel ap-

---

5. The appeal of the Maryland decision indicates that the lower court based its conclusion on its finding that the wife was not a domiciliary of Nevada. Thus, the trial court appears to have concluded that the Nevada court lacked subject matter jurisdiction to enter the divorce decree. The Maryland Court of Appeals affirmed. *See Colby v. Colby*, 217 Md. 35, 141 A.2d 506, 508, *cert. denied*, 358 U.S. 838, 79 S.Ct. 62, 3 L.Ed.2d 74 (1958).

6. We base this conclusion on our inference that the wife's domiciliary status was not fully litigated in the initial Nevada proceeding since the

husband failed to appear. In this respect, the facts in *Colby* are analogous to those in the instant case. Of course, had the domicile issue been fully litigated in the original proceeding, the Maryland court would have been bound to accord the decision full faith and credit. Similarly, had the question of proper service upon Campion been fully addressed and litigated in an Alaska court prior to the Virgin Islands decision, the Virgin Islands District Court would have been bound by the prior determination. However, this did not happen.

plies, thereby defeating the very purpose of the doctrine.

The State also maintains that giving collateral estoppel effect to the Virgin Islands judgment "has the effect of holding that a court sitting in the Virgin Islands is a better judge of the validity of an Alaska judgment in Alaska than is an Alaska court." This statement is both misleading and a misinterpretation of the doctrine of collateral estoppel. Clearly, the Virgin Islands decision does not offer the definitive interpretation of Alaska's service of process requirements. However, under the doctrine of collateral estoppel, where two parties have fully litigated an issue, the holding of the deciding court is binding in subsequent litigation *as between the two parties or their privies.*

We have recognized that under the principles of collateral estoppel, a sister state judgment interpreting an Alaska statute is binding as between the parties to the out-of-state litigation. *State v. Baker,* 393 P.2d 893 (Alaska 1964). In *Baker,* the State of Alaska brought suit in Washington superior court to collect business license taxes under the Alaska Business Licensing Act. The defendants claimed that the Act was unconstitutional. *Id.* at 894. The trial court agreed with the defendants and dismissed the action. The State appealed and the Washington Supreme Court affirmed in part and reversed in part, holding that certain regulatory portions of the statute were unconstitutional and severable. *Id.* at 896.

The defendants in the Washington action then brought suit in Alaska for a refund of taxes paid in prior years, asserting that the State was collaterally estopped by the Washington decision from relitigating the constitutionality of the Act. *Id.* at 894, 896. The Alaska trial court granted summary judgment against the State. *Id.* at 894.

On appeal, we held that "[t]he Constitution of the United States requires that the courts of Alaska give full faith and credit to the judgment of the Washington Supreme Court...." *Id.* at 896. The court stated that "under the doctrine of res judicata [later referred to in the opinion as collateral estoppel] neither the Washington courts nor the Alaska courts may relitigate the question of whether or not the business license taxes were collectible by the State of Alaska...." *Id.* The court concluded that the doctrine barred relitigation not only with respect to the year at issue in the Washington action, but also with respect to previous years. *Id.* at 898. In reaching this result, the court outlined the general purposes of the doctrines of res judicata and collateral estoppel:

> [These doctrines are] founded upon the principle that parties ought not to be permitted to litigate the same issue more than once and that when a right or fact has been judicially determined by a court of competent jurisdiction or an opportunity for such trial has been given, the judgment of the court, so long as it remains unreversed, should be conclusive upon the parties ....

*Id.* at 897.

In *Baker,* the court held that collateral estoppel precludes the relitigation of an interpretation of an Alaska Statute given by a sister state court of competent jurisdiction. In the present case, the Virgin Islands court's conclusion that the Alaska judgment was void for lack of personal jurisdiction was based on its interpretation of Alaska Civil Procedure Rules 4(h) and 12. By analogy, *Baker* indicates that this interpretation should be given preclusive effect.

## CONCLUSION

Based on the above analysis, we reverse the trial court's grant of summary judgment in favor of the State and hold that the State is collaterally estopped from asserting or relying upon the validity of the Nome judgment.[7] The elements for the application of collateral estoppel are satisfied and the limi-

---

7. Based on this conclusion, we need not address Campion's claim on the merits that the Nome judgment was void for lack of personal jurisdic-

tion. Nor need we address the State's contention that Campion waived his jurisdictional ob-

tations on the doctrine urged by the State are inapposite to the circumstances of this case.[8]

jection by failing to raise the issue with the Nome superior court.

8. Insofar as the pleadings in this case encompass a claim on the underlying promissory note signed by Campion, the action can proceed. The judgment of the District Court for the Virgin Islands that the superior court in Nome lacked personal jurisdiction over Campion is clearly based on its conclusion that service was improper, not that minimum contacts with Alaska were lacking given proper service. Further, we ex- press no view as to whether the State is collaterally estopped from contending that the foreclosure, as distinct from the deficiency, was effective, in view of the special interest which a state court has in adjudicating title to real property within its boundaries, *Abadou v. Trad*, 624 P.2d 287, 291 n. 6 (Alaska 1981), and in view of the possibility that persons not parties to the Virgin Islands action might have an interest in the foreclosure proceeding. *See* Restatement (Second) of Judgments § 28(5)(a) (1982).